RECORD NO. 14-1032

In The

# United States Court of Appeals

### For the Fourth Circuit

# GREGORY KANE,

*Plaintiff – Appellant,*

v.

# UPS PENSION PLAN BOARD OF TRUSTEES,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

## BRIEF OF APPELLEE

J. Timothy McDonald
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Telephone: (404) 541-2900
Tim.McDonald@ThompsonHine.com

*Counsel for Appellee*

THOMPSON HINE LLP ♦ 3560 Lenox Road ♦ Suite 1600 ♦ Atlanta, Georgia 30326
(404) 541-2900 ♦ (404) 407-3623 ♦ Fax: (404) 541-2905 ♦ www.ThompsonHine.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1032__    Caption: __Gregory Kane v. UPS Pension Plan Board of Trustees__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__UPS Pension Plan Board of Trustees__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      Please note, the Defendant is the fiduciary of a benefit plan sponsored by United Parcel
      Service, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
     If yes, identify entity and nature of interest:

     Please note, the dispute potentially involves an immaterial amount of benefits in light of the
     assets of the plan ($20.00 per month for Appellant's life beginning in July of 2024) to be paid by
     a benefit plan sponsored by United Parcel Service, Inc.


5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:


6.   Does this case arise out of a bankruptcy proceeding?                          ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:


Signature: _____        Date: ____January 24, 2014____

Counsel for: __UPS Pension Plan Board of Trustees__

## CERTIFICATE OF SERVICE
****************************

I certify that on ___January 24, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Denise M. Clark, Esq.
Clark Law Group, PLLC
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
dmclark@benefitcounsel.com


_____                   ____January 24, 2014____
        (signature)                                         (date)

- 2 -

## TABLE OF CONTENTS

I.    STATEMENT OF JURISDICTION ....................................................1

II.   STATEMENT OF THE ISSUES .......................................................1

III.  STATEMENT OF THE CASE .........................................................2

    A.    PROCEDURAL HISTORY ....................................................2

    B.    STATEMENT OF FACTS ....................................................10

        1.    The UPS Pension Plan ................................................10

        2.    Kane's Retirement Benefit Under the UPS Pension Plan .........12

        3.    Kane's Service Credit Under The UPS Pension Plan ..............14

        4.    The Teamsters Plan's Coverage And Its Change ..................16

        5.    Kane's New Claim For More Service Credit And His Administrative Appeal ................................................17

        6.    The Additional Benefit Kane Seeks ..........................20

IV.   SUMMARY OF THE ARGUMENT ................................................21

V.    LEGAL ARGUMENT ................................................................23

    A.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO THE UPS PENSION PLAN ON KANE'S CLAIM FOR BENEFITS BECAUSE ITS DECISION TO PROVIDE SERVICE CREDIT UNDER THE PLAN ONLY FOR THE PERIOD OF TIME THAT HE WORKED A PART-TIME SCHEDULE WAS NOT AN ABUSE OF DISCRETION ................................................23

        1.    The Abuse Of Discretion Standard Of Review Requires That The Board Of Trustees' Decision Be Upheld As Long As It Is Reasonable. ................................................24

        2.    The Board Of Trustees' Decision Was Not Arbitrary Or Capricious, As It Had A Reasonable Basis For Its Decision. ..25

        a.    The Language of the UPS Pension Plan. ..................28

-i-

b.  The Purposes and Goals of the UPS Pension Plan. ...................31

c.  The Adequacy of the Materials Considered to Make the
    Decision and the Degree to Which They Support It.................32

d.  Whether the Fiduciary's Interpretation Was Consistent with
    Other Provisions in the UPS Pension Plan and With Earlier
    Interpretations of the UPS Pension Plan....................................37

e.  Whether the Decision-Making Process was Reasoned and
    Principled. ...............................................................................39

f.  Whether the Decision Was Consistent With the Procedural and
    Substantive Requirements of ERISA.........................................41

g.  Whether Any External Standard Is Relevant to the Exercise of
    Discretion. ...............................................................................43

h.  What The Fiduciary's Motives Are and Any Conflict of Interest
    It May Have. ............................................................................46

B.  THE DISTRICT COURT PROPERLY DENIED KANE LEAVE TO
    AMEND TO ADD COUNT II BECAUSE HE CANNOT JUSTIFY
    THE DELAY THAT OCCURRED BEFORE HE SOUGHT TO
    LEAVE TO AMEND, AND THE CLAIM THAT KANE NOW
    ALLEGES FAILS AS A MATTER OF LAW. ...................................47

    1.  Leave To Amend Was Untimely Sought and Without Any,
        Much Less Just, Cause for the Delay........................................48

    2.  Kane's Proposed Count II Is Futile Because Section 1132(a)(2)
        is Not a Proper Vehicle To Assert An Individual Benefit Claim
        ...................................................................................................49

    3.  The Proposed Count II Also Is Barred By the Statute of
        Limitations. ...............................................................................52

VI.  CONCLUSION ............................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bailey v. Blue Cross & Blue Shield of Va.,
  67 F.3d 53 (4th Cir. 1995) ...................................................44, 45, 46

Blankenship v. Metropolitan Life Ins. Co.,
  644 F.3d 1350 (11th Cir. 2011) ...................................................47

Blanton v. Anzalone,
  760 F.2d 989 (9th Cir. 1985) ...................................................53

Booth v. Wal-Mart Stores, Inc. Associates' Health and Welfare Plan,
  201 F.3d 335 (4th Cir. 2000) ...................................................*passim*

Bouchat v. Baltimore Ravens Football Club, Inc.,
  346 F.3d 514 (4th Cir. 2003) ...................................................23

Bryant v. International Fruit Products Co.,
  886 F.2d 132 (6th Cir. 1989) ...................................................50, 51

Caputo v. Pfizer, Inc.,
  267 181, 193 (2d. Cir. 2001) ...................................................53

Conkright v. Frommert,
  130 S. Ct. 1640 (2010)...................................................24, 41

Conley v. Pitney Bowes,
  176 F.3d 1044 (8th Cir. 1999) ...................................................50

Coyne & Delaney Co. v. Blue Cross and Blue Shield of Va.,
  102 F.3d 712 (4th Cir. 1996) ...................................................50, 51

David v. Alphin,
  704 F.3d. 327 (4th Cir., 2013) ...................................................53, 54

Eckelberry v. ReliaStar Life Ins. Co.,
  469 F.3d 340 (4th Cir. 2006) ...................................................*passim*

Edes v. Verizon Communications, Inc.,
  417 F.3d 133 (1st Cir. 2005)...................................................52

EEOC v. Navy Federal Credit Union,
    424 F.3d 397 (4th Cir. 2005) ...................................................................23

Evans v. Eaton Corp. Long-Term Disability Plan,
    514 F.3d 315 (4th Cir. 2008) ......................................................24, 25, 36

Firestone Tire & Rubber Co. v. Bruch,
    489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ......................24

Fortier v. Principal Life Ins. Co.,
    666 F.3d 231 (4th Cir. 2012) ..........................................................28, 30

General Electric Co. v. Joyner,
    522 U. S. 136, 143 (1997)........................................................................25

Helton v. AT&T Inc.,
    709 F.3d 343 (4th Cir. 2013) ...................................................................40

Johannssen v. Dist. No. 1 - Pac. Coast Dist.,
    292 F.3d 159 (4th Cir. 2002) ...................................................................23

LaRue v. DeWolff, Boberg & Assoc's,
    552 U.S. 248 (2008)........................................................................51, 52

Leary v. Daeschner,
    349 F.3d 888 (6th Cir. 2003) ...................................................................49

Lee v. Burkhart,
    991 F.2d 1004 (2nd Cir. 1993) ...............................................................50

Magin v. Monsanto Co.,
    420 F.3d 679 (7th Cir. 2005) ...................................................................50

Martin v. Consultants & Admr's Inc.,
    966 F.2d 1078, 1086 (7th Cir. 1992) .....................................................52

Massachusetts Mutual Life Ins. Co. v. Russell,
    473 U.S. 134 (1985)........................................................................49, 50

Metropolitan Life Ins. Co. v. Glenn,
    554 U.S. 105 (2008)........................................................................24, 47

-iv-

Meyer v. Berkshire Life Ins. Co.,
    128 F. Supp. 2d 831 (D. Md. 2001) .................................................................... 53

Sosa v. Airprint Sys., Inc.,
    133 F.3d 1417 (11th Cir. 1998) .......................................................................... 49

Varity Corp. v. Howe,
    516 U.S. 489 (1996) ...................................................................................... 48, 52

Wright v. Heyne,
    349 F.3d 321 (6th Cir. 2003) .............................................................................. 52

**Statutes**

29 U.S.C. § 1104(a)(1) ........................................................................................... 46

29 U.S.C. § 1109 .................................................................................................... 50

29 U.S.C. §1113 ..................................................................................................... 52

29 U.S.C. § 1113(2)(A) ..................................................................................... 53, 54

29 U.S.C. §1132(a)(1)(B) ............................................................................... *passim*

29 U.S.C. §1132(a)(2) ..................................................................................... *passim*

29 U.S.C. §1132(a)(3) ............................................................................................... 2

Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001
    et. seq. .......................................................................................................... *passim*

**Other Authorities**

29 C.F.R. § 2530.210(c) ........................................................................................ 43

29 C.F.R. § 2560.503-1(j)(1) ........................................................................... 30, 33

Federal Rule of Civil Procedure 16 ............................................................... 5, 48, 49

Federal Rule of Civil Procedure 15 ............................................................. 48, 52, 54

## I.    <u>STATEMENT OF JURISDICTION</u>

Appellee/Defendant UPS Pension Plan Board of Trustees ("UPS Pension Plan") does not dispute Appellant's/Plaintiff Gregory Kane's ("Kane's") statement of jurisdiction.

## II.    <u>STATEMENT OF THE ISSUES</u>

1)    Under the UPS Pension Plan, which is governed by the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §1001 et. seq. ("ERISA"), participants earn credit for their service for UPS based on the number of part-time hours worked. Employees working full-time are covered by a different benefit plan. During late March, April and early May of 1984, Plaintiff worked a full-time schedule, but wants that time credited to his part-time benefit under the UPS Pension Plan.

---

The first question presented is:

Was it reasonable for the UPS Pension Plan Board of Trustees to deny Kane credit for part-time work under the UPS Pension Plan for the time that he worked a full-time schedule?

2)    Plaintiff dismissed his breach of fiduciary duty claim (brought under 29 U.S.C. §1132(a)(2)) before discovery began. That claim sought the same relief as did his benefit claim (brought under 29 U.S.C. §1132(a)(1)(B)).

Fiduciary breach claims cannot duplicate the relief sought in a benefit claim. In addition, fiduciary breach claims must be brought within either 3 or 6 years under ERISA, and this one was brought almost 9 years after Kane was on notice of the alleged breach. Additionally, Kane sought to have his fiduciary breach claim reinstated only after discovery had been closed, so that there never was any discovery on the breach of fiduciary duty claim.

The second question presented is:

Did the District Court properly exercise its discretion to deny Kane leave to amend to add his fiduciary duty claim after discovery had ended, especially when that claim was futile as a matter of law?

### III.   <u>STATEMENT OF THE CASE</u>

### A.   <u>PROCEDURAL HISTORY</u>

Plaintiff filed a complaint for additional benefits under the UPS Pension Plan pursuant to 29 U.S.C. §1132(a)(1)(B) and for breach of fiduciary duty with respect to the same wrong pursuant to 29 U.S.C. §1132(a)(3) on December 23, 2011.[1] Kane dismissed the breach of fiduciary duty count without prejudice on March 12, 2012.[2]

---

[1] Joint Appendix ("J.A.") at 0006.

[2] Id. at 0013.

-2-

On July 3, 2013 the UPS Pension Plan moved for summary judgment on the lone remaining count for benefits under §1132(a)(1)(B).[3]  After UPS had moved for summary judgment Plaintiff moved on July 27, 2013 to reinstate Count II.[4]

In a thorough ten-page opinion addressing the motion to reinstate the fiduciary duty breach claim under §1132(a)(2) in Count II, the District Court denied Plaintiff's motion.[5]  As the District Court noted, the original discovery deadline established in its March 14, 2012 scheduling order was extended to May 29, 2012 with UPS's consent.[6]  Kane was then given the right to conduct limited discovery on his claim and discovery was to be completed on February 27, 2013.[7]

With the consent of UPS, discovery was then extended to May 15, 2013 (by a total of 2 ½) months specifically to permit Kane to review the information secured and seek any additional remaining information that Kane may need.[8]  On Kane's request to extend the summary judgment deadline the Court extended the

---

[3] Id. at 0003.

[4] Id. at 0004 (Docket No. 38).

[5] Id. at 0492-501.

[6] Id. at 0493.

[7] Id.

[8] Id. at 0493-94.

summary judgment deadline to June 14, 2013 so Kane could further review the information collected in discovery.[9]

As the District Court pointed out, Kane then filed his motion for summary judgment on June 14, 2013 seeking, in part, summary judgment on the fiduciary breach claim under §1132(a)(2) in Count II even though he had not yet moved to reinstate that claim.[10]   Legally, the District Court held, Kane had to clear two hurdles.  First, he had to show good cause for the delay in bringing the Motion to Reinstate Count II after summary judgment had been filed.[11]   Second, he had to show that his fiduciary breach claim stated a cognizable cause of action.[12]

The District Court held that Kane's motion failed both tasks.  The District Court noted that Kane had not provided any justification for the delay.[13]   The District Court considered the various extensions and that Kane did not seek leave to amend until after discovery closed and 43 days after the dispositive motions deadline.  In addition, the Court noted that there was no new evidence that Kane

---

[9] Id. at 0494.

[10] Id. at 0497.

[11] Id. at 0496-97.

[12] Id. at 0497.

[13] Id. at 0497-98.

relied upon.[14]    As a result, the Court held that Kane failed to demonstrate good cause under Federal Rule of Civil Procedure 16(b).[15]

In addition, the District Court held that the claim that Kane sought to add to the Complaint was futile.    As the District Court noted, ERISA provides a mechanism for recovering benefits in 29 U.S.C. § 1132(a)(1)(B).[16]    Kane invoked that very mechanism in pleading his benefits claim in Count I.[17]    Count II sought relief under a different section – Section 1132(a)(2).[18]    Section 1132(a)(2), the District Court explained, exists to provide remedy for injuries to the plan as a whole opposed to the individual participant.[19]    The District Court concluded that "Count II of Plaintiff's Complaint is the epitome of a personal claim for an individual injury–a type that is specifically barred under Section 502(a)[(2)]."[20]    As a result, the District Court held that the amendment to add Count II was futile and denied the request for leave to amend on that ground as well.[21]

---

[14] Id. at 0497-98.

[15] Id. at 0498.

[16] Id. at 0499 (citing Aetna Health, Inc. v. Davila, 542 U.S. 200, 210 (2004)).

[17] Id. at 0498-99.

[18] Id.

[19] Id. at 0499-500 (citing LaRue v. DeWolff, Boberg & Assoc's, 552 U.S. 248, 256 (2008)).

[20] Id. at 0500 (citing Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)).

[21] Id. at 0500-501.  The Court noted that it therefore did not need to address the

Next the Court addressed the summary judgment motions filed by each party in an order filed on December 11, 2013. In a comprehensive 29-page opinion, the District Court addressed Plaintiff's claim that he was entitled to additional part-time credit for hours that he worked full-time after his full-time seniority date.

The Court began from the premise that neither party disputed that the UPS Pension Plan's decision was subject to the abuse of discretion standard.[22] Preliminarily, the District Court addressed the documents that Kane wanted the District Court to consider from outside the UPS Pension Plans administrative record. The District Court permitted documents from Kane's personnel file to be considered, but rejected the newly-tendered affidavits by Kane and the President of his Union, Robert Fahnestock.[23] Indeed, the District Court also found that neither of the rejected affidavits existed until over a year after the Board of Trustees' decision, and that neither would have changed the analysis of the District Court because they did not offer any information that would rationally affect the decision by the UPS Pension Plan Board of Trustees.[24]

---

UPS Pension Plan's additional argument that Count II is also barred by the statute of limitations. Id. at 0501 n. 7.

[22] Id. at 0538 at n. 10.

[23] Id. at 0540-44.

[24] Id.

The District Court then examined the 8 factors required by this Court in

Booth v. Wal-Mart Stores, Inc. Associates' Health and Welfare Plan, 201 F.3d 335,

342-43 (4th Cir. 2000) in order to determine if the UPS Pension Plan's decision

was an abuse of discretion.   Specifically, the District Court held that it would

consider:

(1)   the language of the plan;

(2)   the purposes and goals of the plan;

(3)   the adequacy of the materials considered to make the decision and the degree to which they support it;

(4)   whether the fiduciary's interpretation was consistent with other provisions in the Plan and with earlier interpretations of the Plan;

(5)   whether the decision–making process was reasoned and principled;

(6)   whether the decision was consistent with a procedural and substantive requirements of ERISA;

(7)   any external standard relevant to the exercise of discretion; and

(8)   whether the fiduciary's motives and any conflict of interest it may have.[25]

Turning to the first factor, the Court held that after reviewing the parties'

arguments, "the language of the Plan does not in any way undermine—and, in fact,

provides affirmative support for—the Board's conclusion that Kane was a full-time

employee during the period in which he seeks additional service credit."[26]

---

[25] Id. at 0545 (quoting Booth, 201 F.3d at 342-43).

[26] Id. at 0548.

Specifically, both the terms of the UPS Pension Plan, and the applicable collective bargaining agreement that required the UPS Pension Plan provide the benefits for part-time service, stated that "full-time seniority" begins when the individual begins working a full-time schedule.[27]

The District Court held that the second factor -- the purposes and goals of the plan, were a factor that did not weigh particularly in favor of either party.[28] The District Court then concluded that the materials considered by the Board of Trustees supported the decision substantially, so that the third factor also weighed in favor of the UPS Pension Plan.[29]

Consistent with the terms of the UPS Pension Plan, the District Court held that it was undisputed that the UPS Pension Plan had consistently applied the rule that it applied to Kane.[30]   In addition, it held that the Board of Trustees had properly considered the schedule that Kane was working and as well as Kane's prior acceptance of the calculation that he now challenges so that the Board of Trustees' decision was reasoned and principled.[31]   As a result, it held that both the fourth and fifth factors supported the Plan's decision.

_____

[27] Id.

[28] Id. at 0548-549.

[29] Id. at 0549-51.

[30] Id. at 0553.

[31] Id. at 0553-554.

-8-

The District Court held that the next two factors -- consistency with the procedural and substantive requirements of ERISA and any external standard relevant to the exercise of discretion -- were not really relevant to this claim.[32] Finally, on the last factor regarding the Board of Trustees' motives and potential conflicts of interest, the District Court found that the advanced irrevocable funding of the Plan by UPS left little potential risk of any conflict of interest.[33] Looking at these 8 factors as a whole, the Court held that "the overwhelming indication of the *Booth* factor analysis is that the Board's conclusion was reasonable under the circumstances. Accordingly, [the District Court held that the] UPS Pension Plan Board of Trustees did not abuse its discretion in denying the service credit for the hours [ ] Kane worked" while he worked a full-time schedule.[34] As a result, the Court entered judgment in favor of the UPS Pension Plan.[35]

---

[32] Id. at 0554-55.

[33] Id. at 0556-57.

[34] Id. at 0556-57.

[35] Id.

## B.  STATEMENT OF FACTS

### 1.  The UPS Pension Plan

The UPS Pension Plan provides pension benefits to certain eligible employees.[36]  Only UPS and other entities within its control group maintain the UPS Pension Plan.[37]

The UPS Pension Plan is administered by its Board of Trustees.[38]  Section 11.3 of the Plan provides in relevant part that:

> Except as otherwise herein expressly provided, the Trustees shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan, and any interpretations or decisions so made shall be conclusive and binding on all persons, subject to the Claims Procedure set forth in Section 11.4; provided, however, that all such interpretations and decisions shall be applied in a uniform manner to all Employees and beneficiaries similarly situated.[39]

As it applies to pension benefit claims, the Claims Procedure referenced in Section 11.3 of the UPS Pension Plan calls for a decision by the UPS Corporate Benefits

---

[36] Id. at 0046  (UPS Pension Plan Article II).

[37] Id. at 0040 & 42-43 (UPS Pension Plan § 1.18 (defining Exhibit A at Employer) and § 1.38 (defining Related Employer)).

[38] Id. at 0075  (UPS Pension Plan § 11.1 (Administration by Trustees)).

[39] Id. (UPS Pension Plan § 11.3 ("Power To Establish Rules And Regulations")).

-10-

Manager responsible for the day-to-day operation of the Plan.[40]  As it relates to Kane's claim, that manager was Michael Weiden.[41]

In the event a claim is denied, the UPS Pension Plan provides for a right of appeal to the Trustees.[42]   On appeal, the claimant or his duly authorized representative may review any documents, records and other information which are pertinent to the denied claim and submit issues and comments in writing.[43]  There is no second appeal or provision in the claims process for reconsideration of the Board of Trustees' decision under the Plan.[44]

Once contributions are made by UPS to the UPS Pension Plan, those funds cannot revert to UPS unless the UPS Pension Plan is terminated and over funded as defined by the UPS Pension Plan, or the contribution was made by mistake and quickly recognized.[45]

---

[40] Id. at 0076  (UPS Pension Plan § 11.4(a) ("Claims Procedure")).

[41] Id. at 0024  (Declaration of Michael Weiden, ¶ 2).

[42] Id. at 0077  (UPS Pension Plan § 11.4(d) ("Claims Procedure")).

[43] Id.

[44] Id.

[45] Id. at 0067-68   (UPS Pension Plan § 7.6. ("Permissible Contributions and Irrevocability")).

## 2. Kane's Retirement Benefit Under the UPS Pension Plan

The UPS Pension Plan provides a retirement benefit to Kane based on his tenure for UPS as a part-time employee.[46] Under the UPS Pension Plan, Kane is eligible for a "Single Life Annuity" or "SLA" benefit.[47]

The amount of the monthly SLA benefit that Kane would receive is determined in part by his Service Credit as that term is defined by the UPS Pension Plan.[48] Section 1.42 of the UPS Pension Plan defines "Service Credit" for purposes of determining the amount of a pension benefit that Kane is entitled to, as the years and months of credit for work in Covered Employment which are accumulated under Article III of the UPS Pension Plan.[49] As relevant to Kane's claim, "Covered Employment" is defined in Section 1.9 of the UPS Pension Plan as employment by UPS for which UPS has agreed with the International Brotherhood of Teamsters to provide pension benefits under the Plan.[50]

The National Master United Parcel Service Agreement with the International Brotherhood of Teamsters provides for a pension plan by the name of the UPS

---

[46] Id. at 0049-50 (UPS Pension Plan § 3.3(c) (defining credit for certain periods worked by a member of the International Brotherhood of Teamsters)).

[47] Id. at 0505 ¶ 12.

[48] Id.

[49] Id. at 0043 (UPS Pension Plan § 1.42 ("Service Credit")).

[50] Id. at 0038 (UPS Pension Plan § 1.9 ("Covered Employment")).

-12-

Pension Plan to provide benefits to part-time employees.[51]   That CBA also indicates that the UPS Pension Plan "will be governed by the terms of the Plan document."[52]

Section 3.3(c) of the UPS Pension Plan provides the applicable table for the accumulation of Service Credit for Kane.[53]   Section 3.3(c) of the UPS Pension Plan provides that:

> Effective for Participants who 1) were represented for purposes of collective bargaining by the International Brotherhood of Teamsters, 2) were employed by the Employer or a Related Employer as a full-time employee pursuant to the National Master Agreement on or after August 1, 2002 and 3) who accrued benefits under this Plan prior to August 1, 2002, under the UPS Pension Plan, such a Participant shall accumulate Service Credit for periods of Covered Employment by such Participants after December 31, 1975 in monthly units based on his hours of Covered Employment for each calendar year in accordance with the following schedule:

| Hours of Covered Employment In Each Calendar Year | Monthly Units of Service Credit |
|---|---|
| Less than 375 hours | 0 |
| 375 to 500 Hours | 6 |
| 501 to 749 Hours | 9 |

---

[51] Id. at 0303 (Collective Bargaining Agreement ("CBA") Art. 34, § 1(i)).

[52] Id. (CBA Art. 34, § 1(i)(4)).

[53] Id. at 0049-50 (UPS Pension Plan § 3.3(c)).

-13-

750 or more Hours                                12[54]

This provision was added to the UPS Pension Plan pursuant to the National Master United Parcel Service Agreement for the Period August 1, 2002 through July 31, 2008 that was entered into between UPS and the Teamsters United Parcel Service National Negotiating Committee.[55]

### 3. Kane's Service Credit Under The UPS Pension Plan

Beginning in October of 1980, Kane was a part-time employee of UPS and subject to the UPS Pension Plan.[56]  The UPS Pension Plan calculated Kane's Service Credit as three years, based on his hours of part-time employment from November 1980 thru April 1, 1984.[57]

Effective March 22, 1984, Kane changed jobs from a part-time pre-loader to a package car driver, and began working a full-time schedule for UPS.[58]  On January 13, 2003, the UPS Pension Plan determined and informed Kane that he

---

[54] Id. (UPS Pension Plan § 3.3 (c)).

[55] Id. at 0303 (CBA Art. 34 § 1(i)(2)).

[56] Id. at 0575.

[57] Id. at 0634-36.

[58] Id. at 0563, 0589 & 0621.

had three years of Service Credit under the UPS Pension Plan.[59]  Kane did not dispute that calculation.[60]

On August 21, 2007, Kane wrote to the UPS Pension Plan recognizing that his part-time employment, and thereby his Service Credit, under the UPS Pension Plan, ended on March 22, 1984.[61]  This is consistent with the UPS Pension Plan's determination four years earlier.[62]

In 2010, the UPS Pension Plan again informed Kane that he had three years of Service Credit under the UPS Pension Plan as of December 31, 2009.[63]  The UPS Pension Plan again, on June 30, 2010, in a letter to the Teamsters Plan and copied to Kane, confirmed that Kane had only three years of Service Credit under the UPS Pension Plan.[64]  In addition, in July 2010, the Teamsters Plan also communicated its understanding that Kane had become a full-time employee on March 21, 1984 – a conclusion consistent with the UPS Pension Plan's determination that Kane had only three years of Service Credit under the UPS

---

[59] Id. at 0073-75.

[60] Id. at 00563.

[61] Id. at 0621.

[62] Id. at 0073-75.

[63] Id. at 0604.

[64] Id. at 0619.

Pension Plan.[65]  **For the 26 years following Kane's transition from part-time to full-time employment, both Kane and the Teamsters Plan agreed with the UPS Pension Plan's calculation of three years of Service Credit.**[66]

### 4. The Teamsters Plan's Coverage And Its Change

Once Kane began working full-time, his benefit for that portion of his employment would be covered by a different plan that was not sponsored by UPS but by the International Brotherhood of Teamsters – the International Brotherhood of Teamsters Hagerstown Motor Carriers and Teamsters Pension Plan ("Teamsters Plan") -- instead of the UPS Pension Plan.[67]  As late as 2010, under the Teamsters Plan, Kane would have been eligible to add his service under the UPS Pension Plan to his service under the Teamsters Plan and retire with a combined 30 years of service in May or June of 2011.[68]  On December 11, 2010, the Teamsters Plan – not the UPS Pension Plan -- made a unilateral change to the Teamsters Plan terms to require that Kane accumulate a combined 30 years of service by February 1, 2011, three to four months earlier than he previously expected, to reach the combined 30-year threshold.[69]  If he did not accumulate 30 years of service by that

---

[65] Id. at 0037.

[66] Id. at 0621 & 0037.

[67] Id. at 0074.

[68] Id. at 0594.

[69] Id. at 0605.

-16-

date, Kane would no longer be eligible to receive a 30-year retirement benefit by combining his service from both plans.[70]

### 5. Kane's New Claim For More Service Credit And His Administrative Appeal

On December 26, 2010, just days after the change in the Teamsters Plan, for the first time ever, Kane asserted that he was actually entitled to more than three years of Service Credit under the UPS Pension Plan.[71] Treating Kane's December 26, 2010, letter as a request for an initial review of his benefits determination, on January 24, 2011, the UPS Pension Plan wrote to Kane and informed him his Service Credit under the UPS Pension Plan was 3 years based on the following figures:

| Year | Part-Time Hours Worked | Service Credit |
|------|------------------------|----------------|
| 1984 | 302 | 0 months |
| 1983 | 1,072 | 12 months |
| 1982 | 1,082 | 12 months |
| 1981 | 911 | 12 months |
| 1980 | 173 | 0 months |
| | | 36 months[72] |

On January 27, 2011, Kane wrote to the Board of Trustees, appealing the decision and contending that his hours for the months of April and May, 1984

---

[70] Id.

[71] Id. at 0594.

[72] Id. at 0575.

should also be included in the calculation of his part-time Service Credit even though he was working a full-time schedule during those months.[73]    Kane supplemented his appeal with another filing on February 16, 2011.[74]

On June 6, 2011, the Board of Trustees denied Kane's appeal after reviewing all of the information submitted to date by Kane and the remainder of the information collected and included in the administrative record, noting that Kane did not work a part-time schedule after March 21, 1984 and that Kane did not dispute that his full-time seniority date was March 22, 1984.[75] A list of the hours Kane worked every month in the relevant period was included in the administrative record.[76] Because employees training for a full-time position work a full-time schedule and receive increased full-time employee pay, the UPS Pension Plan treats the training period as hours worked by a full-time employee, and therefore as hours not eligible for Service Credit for part-time service under the UPS Pension Plan.[77]

The Board of Trustees therefore upheld the initial decision and concluded that Kane had earned 3 years of Service Credit under the UPS Pension Plan using

---

[73] Id. at 0567-69.

[74] Id. at 0572-73.

[75] Id. at 0563.

[76] Id. at 0623-25.

[77] Id. at 0002.

Kane's full-time seniority date of March 22, 1984 as the end of the time that he earned Service Credit under the UPS Pension Plan.[78] It also noted that for many years, Kane had known about, and not disputed, this calculation.[79]

On July 11, 2011, Kane sought "reconsideration" of his appeal. In that request for reconsideration, Kane submitted additional information that he had not submitted to the Board of Trustees prior to the time that it decided his appeal, despite the fact that he had the opportunity to do so.[80] In support of his Motion for Reconsideration, Kane submitted a hand-written note from "B. Inman" dated May 8, 1984, a new employee full-time, checklist and other documents.[81]

On July 20, 2011, Mike Weiden of UPS responded to Kane noting that: "[t]he appeal procedure for any claim under the Plan has been completed. While your letter and this response are not part of that process, responding to your letter is important given the value that UPS places on its relationship with its current and former employees."[82] The letter continues, noting that other than the appeal he had already undertaken, "[t]here are no more appeals available to you under the Plan,

---

[78] Id. at 0002.

[79] Id. at 0003.

[80] Id. at 00478-91.

[81] Id. at 0490-91.

[82] Id. at 0506.

and you have exhausted your administrative remedies."[83]    Finally, the letter explained that even the new information would not change the result because the new information did not show that Kane was working a part-time schedule during the time for which he sought the additional Service Credit.[84]

### 6. **The Additional Benefit Kane Seeks**

Kane is not eligible to begin receiving his monthly benefit under the Pension Plan until July 1, 2024.[85]  If Kane were successful in this action, it would not change any amount that he would receive under the UPS Pension Plan until July 1, 2024.  Should Kane survive until July 1, 2024, and if Kane were successful in this action, it would increase his monthly SLA benefit under the UPS Pension Plan by $20.00 per month beginning July 1, 2024.[86]

By comparison to the additional $20.00 per month Kane seeks starting in July of 2024, benefit payments under the UPS Pension Plan for the calendar year ending December 31, 2011 – the year in which his appeal was denied – totaled $28,737,689.00.    Those payments were distributed among 5,285 former employees.  Thus, the average yearly benefit amount received by each of those

---

[83] Id.

[84] Id.

[85] Id. at 0517 (¶49).

[86] Id. at 0517-18 (¶50) (Kane not disputing that the benefit under the UPS Pension Plan would increase by only $20.00 per month beginning July 1, 2024 if Plaintiff survived until then.)

participants was $5,437.60  By contrast, the benefit increase Mr. Kane would receive yearly – beginning in July of 2024 – is $240.00.  That is less than 9/one-millionths (0.000009%) of the total amount of benefits paid under the UPS Pension Plan in 2011.[87]

The total amount of the assets in the UPS Pension Plan as of March 31, 2012 was $3,322,087,853.89.  The amount of the annual benefit increases that Kane seeks over twelve years from the date of the Board of Trustees' decision is approximately 7/one-hundred millionths (0.00000007%) of the current assets of the UPS Pension Plan.[88]

## IV.   SUMMARY OF THE ARGUMENT

The Board of Trustees of the UPS Pension Plan is entitled to summary judgment on Kane's claim in Count I that his Service Credit was miscalculated because 1) Kane does not dispute that after his full-time seniority date he worked a full-time schedule during the period in question, 2) the UPS Pension Plan does not require that Service Credit be awarded when the participant was working a full-time schedule and 3) Service Credit has consistently not been awarded under the UPS Pension Plan for the period of time after his or her full-time seniority date when an employee is working a full-time schedule. Under the UPS Pension Plan,

---

[87] Id. at 0518-19 (¶51).

[88] Id. at 0519 (¶52).

the Board of Trustees are endowed with the broadest discretion to make these decisions. Because the Board of Trustees' decision was not an abuse of its discretion, its decision should be upheld.

Plaintiff's other claim for an alleged breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) in Count II fails for at least two reasons. First, Kane voluntarily dismissed Count II on March 14, 2012. He did not seek to reinstate it until after discovery began and ended, and after summary judgment briefs had been filed. There is no justification for this delay. Second, even if Plaintiff had not previously dismissed Count II, the claim would still fail as a matter of law because he seeks relief for himself as a defined benefit plan participant when Section 1132(a)(2) provides no such remedy. Further, the claim under Section 1132(a)(2) is brought many years after the applicable ERISA statute of limitations expired. As a result, this Court should affirm the District Court's grant of summary judgment in favor of the UPS Pension Plan on Count I and its decision to deny Kane leave to amend to add Count II.

## V.  LEGAL ARGUMENT[89]

**A.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO THE UPS PENSION PLAN ON KANE'S CLAIM FOR BENEFITS BECAUSE ITS DECISION TO PROVIDE SERVICE CREDIT UNDER THE PLAN ONLY FOR THE PERIOD OF TIME THAT HE WORKED A PART-TIME SCHEDULE WAS NOT AN ABUSE OF DISCRETION**

The UPS Pension Plan Board of Trustees' decision was supported by the undisputed evidence in the record that Kane's full-time seniority date was March 22, 1984 and Kane stopped working a part-time schedule on March 22, 1984, so that Kane was only eligible to receive Service Credit under the UPS Pension Plan up to March 22, 1984. It is also not disputed that the UPS Pension Plan provides the Board of Trustees with the broadest discretion to decide benefit claims under the Plan permissible by law. As will be explained in detail below, for these reasons, the Board of Trustees' decision was not an abuse of discretion. Thus, the District Court's order granting summary judgment on Count I should be affirmed.

---

[89] This Court is well aware of the standard for summary judgment and the UPS Pension Plan will not belabor that point here. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003); EEOC v. Navy Federal Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). Further, as the Court is aware, when a claim for benefits under ERISA is decided on an administrative record like this case, there are largely no facts in dispute, and the Court generally provides an appellate-like review of the Plan fiduciary's decision where, as in this case, it is undisputed that the abuse of discretion standard of review applies. Johannssen v. Dist. No. 1 - Pac. Coast Dist., 292 F.3d 159, 168 (4th Cir. 2002); Booth, 201 F.3d at 341-42.

1. **The Abuse Of Discretion Standard Of Review Requires That The Board Of Trustees' Decision Be Upheld As Long As It Is Reasonable.**

Kane does not dispute that the applicable standard of review is the abuse of discretion standard of review.[90] Beyond that, Kane's Brief studiously ignores the consequence of applying that standard to this claim.

As the Supreme Court of the United States has held, the abuse of discretion standard is a very deferential one. Conkright v. Frommert, 130 S. Ct. 1640, 1644 (2010) ("We held in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989), that an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion."); Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (citing Firestone Tire and Rubber Co., 489 U. S. at 115) (both holding that when a plan gives the administrator discretionary authority to determine eligibility for benefits, the abuse of discretion standard of review applies). The Fourth Circuit has noted that this standard is so deferential that the administrator's decision need not even be correct so long as it has some reasonable basis. Evans v. Eaton Corp. Long-Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008) ("At its immovable core, *the abuse of discretion standard requires a review in Court to show enough deference a primary decision maker's judgment that the Court does not reverse*

---

[90] Kane's Brief at 8.

*merely because it would come to a different result in the first instance.*") (emphasis added); id. (reasonable disagreement with the Plan's decision is not enough to overturn it) (citing General Electric Co. v. Joyner, 522 U. S. 136, 143 (1997)); Eckelberry v. ReliaStar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006) ("Under [the abuse of discretion]r standard, we do not search for the best interpretation of a plan or even for one we might independently adopt. Rather, when reviewing a plan administrator's decision, a court will not disturb any reasonable interpretation." (internal quotation marks omitted)).

Thus, Kane's Brief starts from an incorrect premise. It simply argues whether or not in his view, the UPS Pension Plan was correct. Rather, what Kane has to do is show that the decision of the Board of Trustees was not only incorrect, but unreasonable. Kane cannot make the showing.

### 2.   The Board Of Trustees' Decision Was Not Arbitrary Or Capricious, As It Had A Reasonable Basis For Its Decision.

The Board of Trustees credited every hour of part-time work that Kane performed. Once he began working on a full-time schedule after his full-time seniority date, it no longer provided him with Service Credit under the UPS Pension Plan because that Plan does not credit full-time work. The Board of Trustees' decision was not an abuse of discretion.

As an initial matter, Kane does not dispute that his seniority as a full-time employee began on the day he stopped working part-time as a pre-loader and

began working in a new position – package car driver – on a full-time schedule. He also does not dispute that using the first day that he began work as a package-car driver as his full-time seniority date was correct. He also does not dispute that only his service as a part-time employee is covered by the UPS Pension Plan. He only really disputes the decision of the UPS Pension Plan to use his full-time seniority date as the applicable date to determine the end of his Service Credit as opposed to some later date.

As relevant to Kane's claim, "Covered Employment" is defined in Section 1.9 of the UPS Pension Plan as employment by UPS for which UPS has agreed with the International Brotherhood of Teamsters to provide pension benefits under the Plan.[91] The National Master United Parcel Service Agreement with the International Brotherhood of Teamsters, as relevant to this claim, requires that the UPS Pension Plan provide benefits to part-time employees.[92] Thus, it was not the purpose of the UPS Pension Plan to provide Service Credit for that time period that Kane worked a full-time schedule.

Finally, this conclusion was one that Kane and his union agreed with for decades until the Teamsters Plan – not the UPS Pension Plan – reduced his retirement benefit options. Specifically, as early as January 13, 2003, Kane was

---

[91] J.A. at 0038.

[92] Id. at 0303 (CBA Art. 34, § 1(i)).

informed that he only had three years of Service Credit under the UPS Pension Plan, and Kane did not dispute that calculation.  Over four years later on August 31, 2007, Kane wrote to the UPS Pension Plan and noted that his part-time employment, and thereby his Service Credit under the UPS Pension Plan, ended in March of 1984.  When the need next arose to discuss the issue, in 2010 the UPS Pension Plan again informed Kane that he had three years of Service Credit under the UPS Pension Plan.  Kane – again – did not dispute this.

In a letter to the Teamsters Plan, the UPS Pension Plan again, on June 30, 2010 with a copy sent to Kane, confirmed that Kane only had three years of Service Credit under the UPS Pension Plan.  Not only did neither Kane nor the Teamsters Plan disagree with this, but the Teamsters Plan also communicated the next month its common understanding with the UPS Pension Plan that Kane had become a full-time employee on March 21, 1984. Thus, for 26 years following Kane's transition from part-time to full-time employment, both Kane and the Teamsters Plan agreed with UPS Pension Plan's calculation that Kane had only three years of Service Credit under the UPS Pension Plan.

Contrary to Kane's Brief, the Board of Trustees did not rely on these concessions as the sole or even primary basis for its determination.  Rather, after establishing that that the terms of the UPS Pension Plan and its practice supported the decision to deny additional Service Credit, the Board of Trustees noted Kane's

prior, repeated agreement with the Plan's calculation as <u>additional</u> confirmation of the correctness of its decision.

As an examination of the basis for the Board of Trustees' decision under the eight factors set forth in <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan</u>, 201 F.3d 335 (4th Cir. 2000) confirms that the decision of the Board of Trustees was more than reasonable.  <u>Booth</u> directs District Courts (as the District Court here did) to consider:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

<u>Fortier v. Principal Life Ins. Co.</u>, 666 F.3d 231, 235-36 (4th Cir. 2012) (quoting <u>Booth</u>, 201 F.3d at 342-43).  The first six factors support the Board of Trustees' decision, and the last two are not relevant.  Thus, analyzing the Board of Trustees' decision under these eight factors also leads to the conclusion that its decision was reasonable.

### a. <u>The Language of the UPS Pension Plan.</u>

Nothing in the UPS Pension Plan requires or suggests that participants like Plaintiff should receive credit toward their pension tied to their part-time

-28-

employment for the period in which they were working full-time. The UPS Pension Plan awards a full year's worth of credit once a participant works 750 hours which is only 15 hours a week if the participant works 50 out of the 52 weeks in a year.[93] As the District Court noted, the fact that the schedule in the UPS Pension Plan grants credit for so few hours worked in a week, is evidence that the UPS Pension Plan only credits service for part-time work.[94] The benefit is clearly directed at those working part-time. Thus, the first factor supports the Board of Trustees' interpretation.[95]

Kane's primary response is that the Board of Trustees' decision that working a full-time schedule should be counted as "part-time" work "has yet to be adequately addressed" is not relevant to the first factor, and wrong in any event.

---

[93] Id. at 0050 (UPS Pension Plan § 3.3(c))

[94] Id. at 0547-48.

[95] Kane argues that because he was a probationary full-time employee working a full-time schedule when he was working from March 22, 1984 – April 30, 1984, that time should be considered as part-time work. This argument misses the mark. The UPS Pension Plan does not provide Service Credit for individuals working during a probationary period in which they work a full-time schedule. Thus, whether Kane was working a full-time schedule or a full-time schedule as a probationary employee is not a relevant distinction with respect to the UPS Pension Plan. While that might have ramifications with respect to other aspects of his employment status, the "probationary" nature of his full-time schedule is of no relevance under the UPS Pension Plan. The UPS Pension Plan has always looked to the full-time seniority date, e.g. J.A. at 0634-36, and Kane has not disputed that his full-time seniority date is March 22, 1984.

The argument is not relevant because the first factor is only related to the "language of the plan." Fortier, 666 F.3d at 235 (quoting Booth, 201 F.3d at 342-43). If anything this argument would relate to the fiduciary's interpretation which is considered under factor 4.

This argument is also wrong for two reasons. First, the Board of Trustees is not required to issue a specific definition for each term as Kane claims. (Notably, Kane cites no authority for this proposition. Kane's Brief at 11-12.) Rather, as ERISA's claims regulation requires, the Board of Trustees had to decide <u>his</u> claim and apply its terms to <u>his</u> situation. 29 C.F.R. § 2560.503-1(j)(1) (on appeal the decision must "give the specific reason or reasons for the adverse determination"). It did so, making absolutely clear that it considered someone working after their full-time seniority date was working full-time.[96] Second, the Board of Trustees specifically considered and rejected Kane's argument that the amount of hours he worked was irrelevant to determining whether he was a part-time employee.[97]

---

[96] J.A. at 0563-64. Neither before the District Court, nor this Court, has Kane ever contested that he was working a full-time schedule during the period at issue. Instead he just argues that until he moved beyond a full-time probationary position, his full-time hours should count as part-time. Kane's Brief at 11 (last sentence in full paragraph).

[97] J.A. at 0564 (noting in paragraph 2 that Kane was working a full-time schedule at full-time pay).

Finally, Kane's reliance on the language of the Atlantic Area Supplement to the CBA actually harms Kane's cause and supports the decision by the Board of Trustees.  When including the part Kane does not quote, it says that an employee that completes the transition period Kane relies on "shall be placed on the regular seniority list and <u>his seniority date shall be the first day worked within any ninety (90) day period of his employment</u>."[98]  Thus, this part of the CBA confirms that the full-time seniority date is the first day of the period that Kane began working as a package car driver – March 22, 1984.  This is the very date the UPS Pension Plan used and that Kane seeks to avoid.[99]

Because the language of the UPS Pension Plan is specifically designed for those working part-time, and it awards Service Credit for working as little as 15 hours a week a year, and that language is consistent with the terms of the CBA, the language of the UPS Pension Plan supports the conclusion that Service Credit is not available under the UPS Pension Plan for those individuals working full-time.

### b.    The Purposes and Goals of the UPS Pension Plan.

The second factor also supports the decision of the Board of Trustees' decision because the purpose of the UPS Pension Plan, as it applied to Kane, was to fulfill the requirement of a collective bargaining agreement requirement to fund

---

[98] <u>Id</u>. at 0450 (Article 38, § 1)(emphasis added).

[99] <u>Id</u>. at 0564.

a benefit for part-time employees.[100]    That same collective bargaining agreement provided for a different plan (the Teamsters Plan) to be funded for those working full-time as a package car driver than those working part-time in Plaintiff's prior position as a pre-loader.[101]    Thus, the second factor also supports the decision of the Board of Trustees.[102]

          c.    **The Adequacy of the Materials Considered to Make the Decision and the Degree to Which They Support It.**

The third factor also is satisfied because the administrative record collected by the Board of Trustees showed a consistent interpretation by the Plan over a period from at least 2003 until Kane's appeal was denied in 2011, in which Service Credit under the UPS Pension Plan was no longer earned upon Kane's full-time seniority date, which is when Kane stopped working a part-time schedule.[103]    The Board of Trustees also collected the documents that reflect the correct amount of

---

[100] Id. at 0605 (CBA Art. 34 § 1(i)).

[101] Id. at 0302 CBA Art. 34 § 1(c)).

[102] Kane ignores the facts of this case (his agreed/undisputed to seniority date of March 22, 1984 as a full-time employee, and the fact that he worked full-time from that date forward for decades).  Instead he asks a hypothetical question about what would happen if he later returned to a part-time schedule.  The hypothetical is irrelevant to this claim as he was undisputed by working full-time and had a full-time seniority date of March 22, 1984.  Moreover, as pointed out in the prior section, this is also consistent with the full-time seniority date as called for in the CBA.  See supra at 31.

[103] Id. at 0562-64, 0598, 0604, 0619, 0621, 0634-36.

hours worked by Kane for the relevant period in 1984 and hours reflected in that document are now not disputed by Kane.[104]  As a result, Kane flatly misrepresents the facts when he says (without citation to the record) that "[t]o date the Board has not provided an accounting of Kane's hours during his 30-day period." (Kane Brief at 15). The Board of Trustees only needed to know the seniority date, the hours worked in the relevant period in 1984 and the terms of the Plan to make its decision, and all of that was in the administrative record.

Kane makes a couple of related arguments in response, and all of them are wrong.  First, he again invents a duty of the Board of Trustees, not just to decide his claim, but to define the term "part-time." As noted previously see supra at 29, the Board of Trustees had no such duty.  (Notably, Kane cites no authority for this proposition.  Kane's Brief at 11-12.)  Rather, as ERISA's claims regulation requires, the Board of Trustees had to decide his claim.  29 C.F.R. § 2560.503-1(j)(1).  Moreover, it did decide that Kane's full-time service date of March 22, 1984, not to mention his working full-time after that date, meant he was not working part-time as that term is used in the UPS Pension Plan.  Kane's argument that the Board of Trustees must do more is wrong and (again) not supported by any citation by Kane.

---

[104] Id. at 0624-26 & 0620.

Kane's next response is that his full-time seniority date was sometimes stated as not March 22, 1984, but March 21, 1984 (by his Union),[105] or March 24, 1984 (by his Union),[106] and that his official full-time start date was once listed as April 1, 1984.[107] While these dates all vary by a few days, the District Court correctly noted that none of that matters because he was credited with part-time service for the full month of March (i.e., until April 1, 1984) anyway.[108] As the District Court properly noted,

> [t]he minor variations in the date, however, do not render the Board's decision unreasonable. In order to support its conclusion, the Board needed only 'the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient to support a particular conclusion." Donnell v. Metro Life Ins. Co., 165 Fed. App 288, 295 (4th Cir. 2006) quotation marks omitted). Kane repeatedly stated to the Board that his seniority date was March 22, 1984 and that fact is undisputed in

---

[105] Id. at 0613.

[106] Id. at 0605

[107] Id. at 0597.

[108] Id. at 0551; see generally id. at 0549-51 (discussing the issue).

-34-

<u>this action</u>. ... Accordingly, the Court finds that the Board had substantial adequate evidence to support its conclusion.[109]

Kane also misstates what one of the documents says. He says that a document refers to an effective date of April, 1984 and then "crosses out that line and states 'Remove' <u>because</u> <u>the</u> <u>date</u> <u>was</u> <u>faulty</u>." Kane Brief at 14 (emphasis added.). The document does not say that at all. Rather it corrects the fact that someone had coded Kane in the wrong plan (the MJ Plan). What the document does say is that Kane was in the "UU Plan" from October 29, 1980 through April 1, 1984.[110] Kane has never disputed that this "UU Plan" reference is a reference to his participation in the UPS Pension Plan and that those dates are consistent with others in the administrative record reflecting that Kane was working full-time beginning at least in the month of April, 1984. Instead, the change removes a mistaken entry that had him in the "MJ Plan" instead of the "MI Plan" and that he

_____

[109] <u>Id</u>. at 551 (emphasis added). Kane notes that one "hand-written annotation" of unknown origin "states that the April 1, 1984 date should be May 1, 1984." Kane's Brief at 14; <u>see</u> J.A. 0612. As the District Court immediately noted, the same letter appears elsewhere in the administrative record without the notation. J.A. 0549; <u>see</u> <u>id</u>. 0609-10. The District Court's caution was appropriate because Kane himself submitted copies of this letter, <u>see</u>, <u>e.g.</u> <u>id</u>. 0590 (where Kane states that he is enclosing a copy of the January 13, 2003 letter and argues that the date is wrong). Thus, there is no evidence in the record showing that this note was made by anyone other than Kane on his own exhibit as it is inconsistent with other notations by the UPS Pension Plan in the administration record.

[110] J.A. at 0596.

should have been in the MI Plan (an abbreviation for the Teamsters Plan) as of "4/1/84".[111]  Again, when read as a whole, the record was more than sufficient to support the conclusion reached by the Board of Trustees.[112]

Finally, Kane relies on a document from his superior, Bob Inman, in May of 1984 saying that Kane was offered a full-time position on May 8, 1984.  But this letter says nothing about the UPS Pension Plan.[113]  It gives no indication that its author knows anything about how the full-time seniority date is determined or how Service Credit is determined under the UPS Pension Plan.[114]  It lists 25 topics discussed with Kane and none related to what his Seniority Date is for purposes of Service Credit under the UPS Plan.[115]

The District Court properly held that "even when read in the light most favorable to Kane, the Inman note is still consistent with the Board's position that employees who successfully completed the trial phase were treated as full-time

---

[111] Id. at 0596.

[112] This is another example where Kane ignores the standard of review.  Even if these documents say what he says they did – and they do not – there would still be other evidence in the record to support the Board of Trustees' view even if others might disagree with it.  Under those circumstances, the Board of Trustees' decision is reasonable and should not be disturbed.  See Evans, 514 F.3d at 322, Eckelberry, 469 F.3d at 343.

[113] J.A. at 490.

[114] Id.

[115] Id. at 491.

employees for purposes of the Plan. … The Plan documents indicate that the full-time seniority date is the beginning of the trial period effective upon completion of trial employment."[116]  As the District Court properly held, factor 3 also fully supported the Board of Trustees' decision.

### d. Whether the Fiduciary's Interpretation Was Consistent with Other Provisions in the UPS Pension Plan and With Earlier Interpretations of the UPS Pension Plan.

The evidence that supports the first three factors also supports the fourth. The evidence shows that the decision was consistent with not only the terms of the UPS Pension Plan. It was also consistent with the collective bargaining agreement. Finally, this interpretation had been in place for many, many years before Kane became the first one known to have challenged it.[117]  Thus, the fourth factor also supports the decision of the Board of Trustees.

Kane offers an unclear argument about the Board of Trustees' failing to consider the definition of "Covered Employment" in Section 1.9 of the UPS Pension Plan. (Kane Brief at 16-18).  The premise is false because the Board of

---

[116] Id. at 0552.

[117] Only one other participant is known to have raised the same issue and that participant's claim was decided similarly to Plaintiff's. Id. at 0025 ¶ 5. Given that over 5,200 participants were receiving benefits under the UPS Pension Plan in 2011 alone, id. at 0518 ¶ 51, this interpretation has not been controversial with other participants.

Trustees expressly referenced Section 1.9 noting that it says that "Covered Employment" is defined as "employment by UPS for which UPS has agreed with the International Brotherhood of Teamsters to provide pension benefits under the Plan."[118]

Not only is the premise false, but the conclusion that Section 1.9 somehow helps Kane is also wrong. First, Section 1.9 of the UPS Pension Plan dovetails with Section 3.3 of the UPS Pension Plan that on its face provides, for example, six months' worth of Service Credit to an employee who works just 375 hours in a year – about 15 hours a week – and a full year of credit for just 750 hours a year – again, about 15 hours a week.[119] When a benefit plan provides benefits to an employee who works 15 hours a week, it is obvious that the plan is designed to provide benefits to those working part-time.[120] Thus, the fourth factor also supports the conclusion that the Board of Trustees' decision was reasonable.

---

[118] Id. at 0562.

[119] Id. at 0563.

[120] Kane's citation to the CBA also hurts his cause and supports the decisions of the Board of Trustees and the District Court as that provision expressly says that the pension benefit for Covered Employment is governed by the UPS Pension Plan document and not the CBA. Id. at 0038. It further only refers to providing benefits for those working in a part-time classification, "which includes part-time employment which pre-dates August 1, 1999." Id. This too undercuts Kane's argument that working full-time is to be considered part-time work.

-38-

e.    <u>**Whether the Decision-Making Process was Reasoned and Principled.**</u>

The fifth factor is satisfied because the Board of Trustees' decision sets forth the relevant facts and plan provisions at length. The Board of Trustees' decision also explained its logic – that the hours worked after Kane's full-time Seniority Date are not included in the calculation of part-time hours worked.[121]

Kane's two arguments on this point lack merit. His first is that there were no records of the hours Kane worked from March 22, 1984 forward. This is false. <u>The record shows the hours</u> Kane worked every month from November, 1980 through December, 1992.[122] Notably, his last two complete months of part-time work show Kane working 86.33 and 91.89 hours per month respectively.[123] The first two full months after the change to full-time seniority, his hours essentially double to 143.92 and 178.28 respectively.[124] Not only is that information in the record, but it supports the conclusion of the Board of Trustees.

His second is that the Union President – in an affidavit first provided in this litigation more than two years after Kane's claim was reviewed by the Board of Trustees, and that was provided by a previously undisclosed "witness" – disagrees

---

[121] <u>Id</u>. at 0562-64.

[122] <u>Id</u>. at 0623-30.

[123] <u>Id</u>. at 0625 (January and February, 1984).

[124] <u>Id</u>. (April and May, 1984).

with the Board of Trustees' conclusion. First, as the District Court properly held (and this much Kane does not challenge in his brief) the affidavit of the Union President was outside of the administrative record and not within the control of the UPS Pension Plan.[125] Thus, they are not proper for a court to consider under Helton v. AT&T Inc., 709 F.3d 343 (4th Cir. 2013).[126] Second, as the District Court noted, the Union President's after-the-fact legal conclusion is irrelevant because the Board of Trustees – not the Union President – have exclusive right to interpret the UPS Pension Plan.[127]

The Board of Trustees explained its logic and cited the relevant provisions of the UPS Pension Plan in explaining its view.[128] It specifically noted the hours he worked and that Kane was receiving full-time pay for the hours worked after March 22, 1984.[129] The Board of Trustees did not err in not considering the Affidavit of the Union President as it did not exist at the time of the appeal and it

---

[125] Id. at 0540-44.

[126] Id. at 0543-44 (District Court order explaining why the Affidavit is excluded under Helton v. AT&T Inc., 709 F.3d 343 (4th Cir. 2013)).

[127] J.A. at 0075 (UPS Pension Plan § 11.3 stating that the Trustees have the exclusive right to interpret the plan); id. at 0544 (District Court order rejecting the argument by Kane).

[128] Id. at 0562-63.

[129] Id. at 0563.

was not in the control of the Board of Trustees to collect.[130]   Moreover, that information is not relevant.  Thus, the fifth factor also supports the decision of the Board of Trustees.

### f.   Whether the Decision Was Consistent With the Procedural and Substantive Requirements of ERISA.

Kane does not allege that there were any violations of the claims regulations for ERISA appeals.  Indeed, the UPS Pension Plan's focus on the seniority date for determining the cut-off between part-time and full-time employment provides a readily ascertainable decision point that is consistent with ERISA's focus on permitting plans to be run efficiently, thus encouraging plan sponsors to maintain them.  Conkright, 130 S. Ct. at 1649 ("Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" (citation omitted, insertion in original)).[131]

On this factor, Kane appears to contend that because the March 23, 1984 – April 30, 1984 period that Kane worked after he started working a full-time schedule was not credited for his service under the Teamsters Plan, it must be credited for service under the UPS Pension Plan.  Searching his brief, however,

_____

[130] Id. at 0543-44.

[131] Kane again incorrectly asserts that the Board of Trustees had a duty to not just decide his claim, but to define a specific term.  Again, this is false.  See supra at 30 & 33.

there is no explanation for why this is so, or why it should not be the reverse: because it is not counted as Service Credit under the UPS Pension Plan, shouldn't it be counted as Service Credit under the Teamsters Plan?[132]    Why would the Teamsters' own CBA set his full-time seniority date as March 22, 1984, and then not pay him benefits from that date?[133]    More fundamentally, his error is in assuming that every hour's participation must earn him Service Credit for one plan or the other.    There is no support for that in his Brief because no support for that proposition exists.[134]

---

[132] Kane again relies on an affidavit of the Union President that the District Court properly excluded on this point for the reasons discussed in the prior section of this Brief.  Kane misleads the court when he asserts here that the Board of Trustees "disregarded this information from the President of the Union."  Kane Brief at 19. This is, of course, impossible since Kane did not tender this affidavit until October 24, 2013 when it was filed with the Court, J.A. at 0520 (ECF header), and the decision on Kane's claims for benefits was made more than 2 years earlier.  Id. at 001-003 (June, 2011 decision).

[133] See supra 29-30 (discussing the seniority date definition in the Atlantic Area Supplement to the CBA).

[134] Essentially, Plaintiff argues that all of his months should count under one plan or the other so that he is credited with Service Credit for each of the 12 months in a year.    However, his argument breaks down when one considers that if he is awarded the extra Service Credit for the UPS Pension Plan, he will actually receive 14 months of credit (six from the UPS Pension Plan and eight from the Teamsters Plan) for the 12 months that he worked in 1984. J.A. at 0616 (noting that Kane received 8 months of Service Credit under the Teamsters Plan in 1984).  There is no basis for the assumption that for all years worked, the employee must have exactly 12 months of service credit under the plans combined.

Kane argues that 29 C.F.R. § 2530.210(c) supports his cause. That subsection of the regulation does not apply to this plan because, as the District Court held, it only applies to a multiple employer plan, and Plaintiff concedes that only UPS is the sponsor of the UPS Pension Plan.[135] Thus it is <u>not</u> a multiple employer plan.

Finally, Kane (again) misrepresents the record and asserts that the Board of Trustees did not consider the Inman handwritten note. Even though Kane only submitted this after his appeal had been decided, the Board of Trustees considered and rejected that argument.[136] For these reasons, the sixth factor also supports the Board of Trustees' decision.[137]

### g. <u>Whether Any External Standard Is Relevant to the Exercise of Discretion.</u>

With the first six factors supporting the Board of Trustees' decision, the last two are of no weight. As to the seventh, there is no external factor applicable to deciding the reasonableness of according part-time credit for part-time work only

---

[135] J.A. at 0503 (¶ 2 Kane admitting that no non-UPS employer maintains the UPS Pension Plan); <u>id</u> at 0554 (District Court ruling).

[136] J.A. at 0477 (second paragraph sentences 4-7).

[137] Kane also again misstates the record when he ignores the analysis of the UPS Pension Plan's provisions by the Board of Trustees, <u>id</u>. 0562-63, and when he states that the Board of Trustees relied "almost solely" on Kane's prior agreement with the UPS Plan's calculation, Kane's Brief at 21. It is clear in the record that Kane's concession was mentioned in further support of its decision <u>after</u> it analyzed the terms of the UPS Pension Plan. J.A. 0562-64.

under the UPS Pension Plan as it applies to Kane. This case is not one like a medical claim where, for example, the standard set by the Center for Disease Control might be relevant. Thus, the seventh factor does not apply.

Kane's argument on this factor ignores the applicable standard of review. Kane concedes that the abuse of discretion standard of reviews applies. Kane's Brief at 8. When the abuse of discretion standard applies, terms in the plan are not construed against the plan as Kane argues. Just the opposite. "Under this standard, [a court does] not search for the best interpretation of a plan or even for one we might independently adopt. Rather, when reviewing a plan administrator's decision, a court "will not disturb any reasonable interpretation." Eckelberry, 469 F.3d at 343 (upholding a conflicted insurance company's interpretation of the terms "unexpected" and "foreseeable" as reasonable under the modified abuse of discretion standard even though they were undefined in the plan).[138]

The case Kane cites is inapposite. In Bailey v. Blue Cross & Blue Shield of Va., 67 F.3d 53, 57 (4th Cir. 1995) (citation omitted) the court held that the plan administrator "stood as the single beneficiary of a substantial sum based on its denial of benefits." In light of that, in the very next paragraph, the court in Bailey

---

[138] Here the deference is even greater as there is no conflict of interest as explained in the next subsection of the brief.

-44-

held that ambiguous terms in an insurance contract are construed against the drafter. Id.

In this case, the amount at issue – if it counts for anything at all – is nominal. It is undisputed by Kane that a decision here would have zero financial consequence to the UPS Pension Plan from the time it was made in June of 2011 for at least 13 years until July of 2024.[139]  Even if Kane were to survive until then, his yearly benefit increase would only be $20.00 per month or $240.00 a year for a plan that pays $28,737,689.00 in benefits per year and had over three-billion dollars in assets -- $3,322,087,853.89 in the relevant time period.[140]  Under no stretch of the English language is this the "substantial sum" Bailey requires. Cf. Eckleberry, 469 F.3d at 342 & 343 (giving deference to interpretation of undefined terms were $86,000.00 were at issue; Kane would have to receive benefits for 358-plus years to reach even that threshold).

Thus, even if Bailey represents an external standard, it is inapplicable here. Factor 7 is least neutral for the UPS Pension Plan.[141]

_____

[139] Id. at 0517-18 (¶50) (Kane not disputing that the benefit under the UPS Pension Plan would increase by only $20.00 per month beginning July 1, 2024 if Plaintiff survived until then.)

[140] Id. at 0519 (¶52).

[141] Kane's argument also falters because the application of the part-time full-time dichotomy to him was reasonable given his full-time service date of March 22, 1984 and increase in actual hours worked after that date.  See supra at 39.

### h.   What The Fiduciary's Motives Are and Any Conflict of Interest It May Have.

As to the eighth factor, the UPS Pension Plan is not paid for out of current assets of UPS, but out of a Trust that is funded by UPS through irrevocable contributions made in advance.[142]   As a result, as the District Court held, it poses no conflict at all. Id. at 0555-56 (citing Lance v Retirement Plan of Int'l Paper Co., 331 Fed. Appx. 251, 254-55 (4th Cir. 2009) and de Nobel v. Vitro Corp, 885 F.2d 1180, 1191 (4th Cir. 1989)).[143]

And even were that not the case, the amount at issue compared to the UPS Pension Plan's assets is so small as to be immaterial with respect to a possible conflict.  It is undisputed that the amount of any financial impact that this action would have on the Plan is minute, as the yearly total change in benefits is less than seven one-hundred millionths of the Plan's assets (0.00000007%) in today's dollars, and even far less when discounted for the time value of money almost eleven years hence when Plaintiff can finally begin to draw his benefit.[144]   It is also undisputed that even if Plaintiff was successful, <u>his benefit would only increase</u>

---

[142] Id. at 0067-68 (UPS Pension Plan § 7.6).

[143] Kane misstates the duty of a fiduciary like the Board of Trustees when he says it is to act in Kane's  best interest. Kane Brief at 10 n.2.  The fiduciary duty of the Board of Trustees was to act in the best interest of all of the tens of thousands of beneficiaries and participants of the UPS Plan,  29 U.S.C. § 1104(a)(1), not just Kane.  Other participants have an interest in not seeing excess benefits paid out.

[144] Id. at 0518-19 (¶¶51-52).

$20 per month beginning on July 1, 2024 should he survive until then. Id.  The monetary impact of this decision, if it has any impact at all, is one that is infinitesimally small compared to the Plan's assets. Glenn, 554 U.S. at 11(when there is little evidence of a conflict "[i]t should prove less important (perhaps to the vanishing point) …"); see Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350, 1357 (11th Cir. 2011) (holding that a claim involving over $510,000 for a company with revenues (not just plan assets) of over $50,000,000,000 is not large enough to be a dispositive factor in the conflict analysis).  Thus, the eighth factor is at worst neutral if not favorable to the UPS Pension Plan.

With at least six of the eight factors applicable, and all of those that are applicable favoring the UPS Pension Plan, the strong weight of the Booth factors also fully supports the decision of the Board of Trustees.  The District Court's grant of summary judgment on Count I to the Board of Trustees should be affirmed.

**B.    THE DISTRICT COURT PROPERLY DENIED KANE LEAVE TO AMEND TO ADD COUNT II BECAUSE HE CANNOT JUSTIFY THE DELAY THAT OCCURRED BEFORE HE SOUGHT TO LEAVE TO AMEND, AND THE CLAIM THAT KANE NOW ALLEGES FAILS AS A MATTER OF LAW.**

This Court should affirm the District Court's discretionary decision to deny Kane's request for leave to add Count II.  First, his bare reference to it in seven sentences in his brief, without any citation to authority, is not enough to preserve

the issue. He advances no substantive argument, improperly waiting for his reply brief to advance substantive argument and denying the UPS Pension Plan the opportunity to respond to his argument.

Left to guess as to Kane's argument, the UPS Pension Plan can identify three reasons (the second through fourth overall) why he is wrong and the District Court is correct:  A) There was no good cause for the delay in seeking leave to add Count II, B) the claim is futile as it is barred by the Supreme Court's decision in Varity v. Howe and similar cases, and C) the claim is futile as it is barred by the statute of limitations.

## 1. Leave To Amend Was Untimely Sought and Without Any, Much Less Just, Cause for the Delay.[145]

As the District Court properly held, Kane's request to add Count II Motion came far too late.  Discovery closed months before.  Indeed, the District Court had previously required that any amendment like this was due on April 30, 2012, and then extended that another month to May 29, 2012.[146]   Kane's request for an amendment came 14 months after this period ended.

As granting leave to amend here would have required modifying the District Court's scheduling order, Federal Rule of Civil Procedure 16(b) requires that the

---

[145] This decision by the District Court is reviewed under the abuse of discreting standard Nourison Rug Co., v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

[146] Id. at 0493.

movant must first show good cause. <u>Leary v. Daeschner</u>, 349 F.3d 888, 909 (6th Cir. 2003) (after "scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)"); <u>Sosa v. Airprint Sys., Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

Kane cites no reason why after discovery was closed and summary judgment briefs filed, this new claim should be added to the action. There is simply no good cause shown, and, as explained in the next two sections, nothing could render this futile claim meritorious in any event. The District Court properly exercised its discretion to deny leave to add this claim under Rule 16.[147]

## 2. Kane's Proposed Count II Is Futile Because Section 1132(a)(2) is Not a Proper Vehicle To Assert An Individual Benefit Claim

Section 1132(a)(2) provides a right for a plaintiff to bring a claim on behalf of a plan and not for his or her direct benefit. Existing Supreme Court precedent that claims under Section 502(a)(2) are to be brought to benefit the plan, not an individual like Kane. <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134,

---

[147] <u>Id.</u> at 0494-97.

142 n.9 (1985) (Section 502(a)(2) claims may only be "brought in a representative capacity on behalf of the plan."); id. at 140 (29 U.S.C. § 1109 on which Section 502(a)(2) claims are based requires plan fiduciaries "to make good to such plan any losses to the plan." (emphasis original)); id. at 142 (Section 502(a)(2) claims are focused on "the possible misuse of plan assets "not the rights of an individual beneficiary).

Indeed, in a case like this where the plaintiff is seeking benefits for himself, courts have generally dismissed claims under Section 1132(a)(2). See Coyne & Delaney Co. v. Blue Cross and Blue Shield of Va., 102 F.3d 712, 714-15 (4th Cir. 1996) (dismissing Section 502(a)(2) claim because plaintiff sought payment of individual health plan benefits); see also Magin v. Monsanto Co., 420 F.3d 679, 687 (7th Cir. 2005) (dismissing fiduciary breach claim because plaintiff was seeking severance benefits for himself, not relief for a plan); Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999) (dismissing Section 502(a)(2) claim where plaintiff sought disability benefits for self); Lee v. Burkhart, 991 F.2d 1004, 1009 (2nd Cir. 1993) (dismissing Section 502(a)(2) claim where plaintiff sought individual plan benefits); Bryant v. International Fruit Products Co., 886 F.2d 132, 135 (6th Cir. 1989) (dismissing Section 502(a)(2) claim where plaintiff sought defined pension benefits for self). Thus, even if plaintiff had not previously dismissed this claim it would not be one for which any relief was available.

In LaRue v. DeWolff Boberg & Associates, 552 U.S. 248, 254-55 (2008),

the Court explained that Section 502(a)(2) is designed to protect the assets of the

plan (and here Plaintiff seeks to reduce those benefits, albeit minimally) whereas

other provisions of ERISA (like 29 U.S.C. §1132(a)(1)(B) on which Count I is

based) seek to protect the participant's right to his or her benefits.  With respect to

Section 502(a)(2), the Supreme Court held that "[a] fair contextual reading of the

statute makes it abundantly clear that its draftsmen were primarily concerned with

the possible misuse of plan assets, and with remedies that would protect the entire

plan, rather than with the rights of an individual beneficiary." Id. at 255 (quotation

omitted).  Simply put, Section 502(a)(2) is not available to Kane in his pursuit for

his own gain. [148]

---

[148] There is a limited exception to the rule that a claim under Section 502(a)(2) for
a breach of fiduciary duty must be brought to benefit the Plan as a whole when it
comes to 401(k) plans.  The UPS Pension Plan is a defined benefit plan (not a
401(k) plan) in which Kane has been promised a certain amount per month
beginning at some time in the future, and that amount is to be paid out of a trust
established for the benefit for all of the participants and beneficiaries covered by
the Plan.  See  LaRue, 552 U.S. at 255.  As a result, no participant has a right to
any particular aspect of the fund that supports a defined benefit plan, but only to a
payment from the fund at the appropriate time.  Id.  Claims relating to defined
benefit plans like the UPS Pension Plan do not permit the Kane to seek relief for
himself under Section 502(a)(2).  See Coyne & Delaney Co. v. Blue Cross and
Blue Shield of Va., 102 F.3d 712 (4th Cir. 1996); Bryant v. International Fruit
Products Co., 886 F.2d 132 (6th Cir. 1989).

LaRue, on the other hand, involved a different type of plan, a defined contribution

Section 1132(a)(2)'s remedy is naturally limited, as those cases so hold, because another section of ERISA, Section 1132(a)(1)(B) that is the basis for Kane's claim in Count I, provides an avenue for the relief that Kane seeks. The Supreme Court has rejected claims under the similar language of Section 502(a)(3) when a claim is available under Section 502(a)(1)(B) for just this reason. See Varity Corp. v. Howe, 516 U.S. 489, 518-19 (1996). Thus, the proposed new claim is futile, as well as asserted belatedly, and thus also fails under Rule 15.

### 3. The Proposed Count II Also Is Barred By the Statute of Limitations.

Kane's new claim would be also barred by the statute of limitations. For claims like the one proposed in Count II that assert a breach of fiduciary duty, Kane must bring the claims within the earlier of three years of having actual knowledge of the alleged breach, or in any event six years after the alleged breach occurred. 29 U.S.C. §1113; e.g., Edes v. Verizon Communications, Inc., 417 F.3d 133, 142 (1st Cir. 2005) (knowledge of the transaction that was the alleged breach triggers the statute of limitations) (citing Martin v. Consultants & Admr's Inc., 966 F.2d 1078, 1086 (7th Cir. 1992)); Wright v. Heyne, 349 F.3d 321, 330 (6th Cir.

---

plan or specifically a 401(k) plan, where there was an individual account in which the money was held in trust solely for one participant and no one else. LaRue, 552 U.S. at 255-56. In that limited circumstance, the Court permitted a cause of action under Section 502(a)(2). This was because any alleged breach of fiduciary duty with respect to the individual account plan would necessarily affect LaRue. Id. at 256. Because this case involves a defined benefit plan and not a 401(k) plan, the limited exception in LaRue does not apply.

-52-

2003) (same); <u>Blanton v. Anzalone</u>, 760 F.2d 989, 992 (9th Cir. 1985) (same) <u>Meyer v. Berkshire Life Ins. Co.</u>, 128 F. Supp. 2d 831, 838-40 (D. Md. 2001) (same).

Here, Kane knew exactly how his part-time Service Credit was calculated as early as January 13, 2003 when the UPS Pension Plan advised Plaintiff that he had 3 years of Service Credit under the UPS Pension Plan.[149]  Thus, Kane had actual knowledge of all of material facts necessary to understand the alleged breach about which he complains almost a full 9 years before he filed this complaint and the statute of limitations was triggered.  <u>Caputo v. Pfizer, Inc.</u>, 267 181, 193 (2d. Cir. 2001).  This is well beyond the 3 year actual knowledge standard under Section 1113(1).

Even if the three-year provision did not apply, the alleged breach occurred no later than January 13, 2003 when the Plan informed Plaintiff that he had only three years of Service Credit under the Plan.  This conclusion was the "date of the last action, which constituted a part of the breach," 29 U.S.C. § 1113(2)(A), which triggers the statute of limitations.  This Court's recent decision in <u>David v. Alphin</u>, 704 F.3d. 327 (4th Cir., 2013) is controlling on this point.

In <u>David</u>, plaintiffs asserted that various investments were prohibited transactions that violated ERISA's fiduciary duty requirements.  <u>Id</u>. at 340.  The

---

[149] J.A. 0073-75.

defendant asserted that the statute of limitations ran from the making of the initial investment; plaintiffs alleged that the statute of limitations was triggered anew each day that the investment was held. Id. This Court rejected the Plaintiffs' assertion and held that it was the initial investment in the allegedly imprudent investment that triggered the statute of limitations. It was not "re-triggered" by the adherence to that initial decision. Id. at 339-43.

Here, as of January 13, 2003, at the latest, the Plan had told Kane that Kane's Service Credit under the Plan for his part-time service was no more than three years. Kane never worked part-time after this period, nor did any other new events occur that could have changed the service. Thus, even if the three-year statute of limitations did not apply, Kane's claim is barred by the six-year statute of repose. David, 704 F.3d at 339-43; 29 U.S.C. § 1113(2)(A). Thus, this claim is also futile under Rule 15 because it is time-barred.

For all these reasons, the District Court properly denied Kane leave to amend to add Count II.

## VI.    **CONCLUSION**

The District Court's judgment should be affirmed. Summary judgment was properly entered in favor of the Board of Trustees on Count I because its decision to deny additional Service Credit for Kane for the period of time that he did not work a part-time schedule was reasonable and not an abuse of discretion. With

respect to Count II, the District Court properly exercised its discretion to refuse the proposed amendment because it was filed 14 months too late and Kane offered no excuse (much less a justifiable one) for the delay. Finally, the proposed Count II is not actionable as a matter of law because it is not a claim for the benefit of the plan and it is barred by the statute of limitations as well.

Respectfully submitted, this 16th day of May, 2014.

/s/ J. Timothy McDonald
J. Timothy McDonald
Georgia Bar No. 489420
(admitted pro hac vice)
*Attorneys for Defendant UPS Pension Plan Board of Trustees*

**THOMPSON HINE**
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
Tim.McDonald@ThompsonHine.com

## CERTIFICATE OF COMPLIANCE WITH RULE
## 28.1(e) or 32(a)

1. This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or
32(a)(7)(B) because:

    ☒    this brief contains *12,817* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒    this brief has been prepared in a proportionally spaced typeface using *Microsoft Word, Times New Roman, 14 point*.

    ☐    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

_____May 16, 2014_____      /s/ J. Timothy McDonald_____
Date:                                    *Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of May, 2014, I caused this Brief on Appellee to be filed electronically with the Clerk of the court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Denise M. Clark
Clark Law Group, PLLC
1250 Connecticut Avenue, NW, Suite 200
Washington, DC 20036

I further certify that on this 16th day of May, 2014, I caused the required copies of the Brief of Appellee to be filed with the Clerk of the Court and to be served, via UPS overnight delivery, upon Denise M. Clark, counsel for Appellant, at the above address.

/s/ J. Timothy McDonald
*Counsel for Appellee*

-57-