In The

# UNITED STATES COURT OF APPEALS
## for the FOURTH CIRCUIT

## <u>Record No.: 14-1032</u>

## GREGORY KANE,
Appellant,

v.

## UPS PENSION PLAN BOARD OF TRUSTEES,
Appellee.

On Appeal From The U.S. District Court for the District of
Maryland
Northern Division

—

## Appellant's Reply Brief
———

Denise M. Clark, Esq.
**Clark Law Group, PLLC**
1250 Connecticut Avenue, N.W., Suite 200
Washington, DC 20036
T (202) 293-0115
F (202) 293-0115
*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT ...................................................................................................... 1

I.    THE BOARD OF TRUSTEES FAILED TO ENGAGE IN A
      DELIBERATE, PRINCIPLED REASONING PROCESS
      SUPPORTED BY SUBSTANTIAL EVIDENCE WHEN IT
      DENIED KANE SERVICE CREDIT DURING HIS 30-DAY
      TRIAL PERIOD WHILE TRANSITIONING FROM PART-
      TIME TO FULL-TIME STATUS ...................................................... 1

      A.    None of the Appellee's arguments based on the record in
            this case suffice to uphold the district court's erroneous
            conclusion that the Board of Trustees did not abuse its
            discretion when it failed to provide service credit under
            the plan to Kane for all of his part-time employment................. 1

      B.    The Appellee's analysis of the eight factors set forth in
            *Booth v. Wal-Mart Stores*, *Inc. Assocs. Health & Welfare
            Plan*, 201 F.3d 355 (4th Cir. 2000) is bereft of merit. ................. 4

            1.    The language of the UPS Pension Plan ............................ 5

            2.    The Purposes and Goals of the UPS Pension Plan ........... 7

            3.    The Adequacy of the Materials Considered to
                  Make the Decision and the Degree to Which They
                  Support It. ........................................................................ 8

            4.    Whether the Fiduciary's Interpretation Was
                  Consistent with Other Provisions in the UPS
                  Pension Plan and With Earlier Interpretations of
                  the UPS Pension Plan. .................................................... 11

            5.    Whether the Decision-Making Process was
                  Reasoned and Principled. ............................................... 12

6.      Whether the Decision Was Consistent with the Procedural and Substantive Requirements of ERISA. ...........................................................................13

7.      Whether Any External Standard Is Relevant to the Exercise of Discretion ....................................................14

8.      Whether Any External Standard is Relevant to the Exercise of Discretion ....................................................15

II.     THE DISTRICT COURT WRONGLY DENIED KANE LEAVE TO REINSTATE HIS ERISA § 502(a)(2) CLAIM WHEN HE SOUGHT PROPER RELIEF FOR THE PLAN. ............16

A.     Good Cause Was Not Required Where the Parties Agreed CountII Could Be Reinstated, and the Court Did Not Impose the Qualification of Good Cause in the Modified Scheduling Order. . ....................................................16

B.     Kane Seeks Relief For the Plan Under ERISA § 502(a)(2)......................................................................18

C.     Kane's ERISA § 502(a)(2) Claim is Not Barred By the Statute of Limitations..............................................18

CONCLUSION ........................................................................20

REQUEST FOR ORAL ARGUMENT ...............................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bailey v. Blue Cross & Blue Shield of VA.*,
    67 F.3d 53 (4th Cir. 1995) ...........................................................................14

*Bernstein v. CapitalCare, Inc.*,
    70 F.3d 783 (4th Cir. 1995) ............................................................................4

*Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*,
    201 F.3d 335 (4th Cir. 2000) ...................................................................5, 15

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)........................................................................................5

*Ellis v. Metro Life. Ins. Col*,
    126 F.3d 228 (4th Cir. 1997) ..........................................................................4

*Helton v. AT&T*,
    709 F.3d 343 (4th Cir. 2013) ...................................................................8, 15

*Jani v. Bert BELL/Pete Rozelle NFL Player Retirement Plan, et al.*,
    209 Fed. Appx. 305 (4th Cir. 2006) ...............................................................4

*Metropolitan Life Insurance Co. v. Glenn*,
    128 S.Ct. 2343 (2008)...................................................................................15

*Richardson v. Perales*,
    402 U.S. 389 (1971)........................................................................................4

*Wheeler v. Dynamic Eng'g Inc.*,
    62 F.3d 634 (4th Cir. 1995) ..........................................................................14

*Williams v. Metro. Life Ins. Co.*,
    609 F.3d 622 (4th Cir. 2010) ...................................................................8, 15

**STATUTES**

29 U.S.C. § 1053(b)(1).............................................................................14

29 U.S.C. § 1113......................................................................................15

**REGULATION**

29 C.F.R. § 2520.102-3......................................................................6, 7, 13

# ARGUMENT

**I. THE BOARD OF TRUSTEES FAILED TO ENGAGE IN A DELIBERATE, PRINCIPLED REASONING PROCESS SUPPORTED BY SUBSTANTIAL EVIDENCE WHEN IT DENIED KANE SERVICE CREDIT DURING HIS 30-DAY TRIAL PERIOD WHILE TRANSITIONING FROM PART-TIME TO FULL-TIME STATUS.**

**A. None of the Appellee's arguments based on the record in this case suffice to uphold the district court's erroneous conclusion that the Board of Trustees did not abuse its discretion when it failed to provide service credit under the plan to Kane for all of his part-time employment.**

Appellee's main argument is that it did not abuse its discretion when it denied Kane service credit during the time he worked a 30-day trial period while undergoing the process of transitioning from part-time to full-time employment because Kane was working a full-time schedule. The issue presented is how Appellee arrived at the erroneous conclusion that Kane was working a full-time schedule. However, the term "full-time" is not defined in the Plan. Rather than define "full-time" or elaborate as to Kane's alleged full-time status, the Appellee's brief hopes that by continuously repeating the phrase "Kane was working a full-time shift" the Court will agree. To date, Appellee has not provided the Court with adequate evidence to support the assertion that the Plan, as opposed to the Collective Bargaining Agreement determines whether Kane was working a full-time shift. It follows that if that definition is solely in the Collective Bargaining Agreement, that is a document that is not the Plan and there is no evidence in the

record that the Trustees had discretion to interpret the Collective Bargaining Agreement, as they have discretion to interpret the Plan. The Appellee states that the Plan trustees based Kane's alleged full-time status on the number of hours worked. The Appellee is arguing that full-time status is based on the number of hours worked in a month, because the only documentation regarding Kane's hours that the Appellee provided was Kane's monthly hours.[1] The Appellee compares Kane's hours worked in January and February of 1984 to his hours worked in April and May of the same year and surmises that because the hours are more in April and May that Kane must have been working a full-time shift.[2] If this is in fact how "full-time" is determined under the Plan, Kane is still uncertain as to how many hours in a month constitutes "full-time" under the Plan. However, no reference can be found in the Plan document to support Appellee's claim that "full-time" is based on hours work. Rather, the Plan document states that covered employment is not based on hours but is "any employment by the Employer while covered by the National Master Agreement which is classified as part-time employment in accordance with the terms of the National Master Agreement, including part-time employment which predates August 1, 1999, and with respect to which such agreements provides for benefits under this Plan."[3]

---

[1] *See* Response Brief of Defendant-Appellee ("App. Br.") at 39.
[2] *Id.*
[3] J.A.96

Further, the Appellee argues that it determined Kane's service credit by his full-time seniority date even when it had knowledge that there was a lack of consensus about Kane's full-time seniority date and the March 22, 1984 date could not be relied on.[4] Appellee also determined that Kane was working a full-time shift based on the fact that Kane did not dispute his service credit earlier and that he initially relied on UPS's calculation of his service date.[5] As Kane discussed in his opening brief, Kane is not a fiduciary and, unlike Appellee, had no duty to immediately investigate to ensure that UPS calculated his service credit accurately.[6] It was only when the Teamsters Plan was amended and Kane realized that the miscalculation of his service date would negatively affect him that he raised the issue of his miscalculated service date with the Appellee.

The Appellee argues that the evidence it looked at was (1) Kane's initial concessions as to UPS's calculation of his service date, and (2) the fact that Kane's work hours for April and May of 1984 were higher than his work hours for January and February of that same year. Appellee failed to (a) uncover what the union bargained for with respect to its understanding of the terms "part-time" and "full-time" under the Plan and the Collective Bargaining Agreement ("CBA"), (b) define the essential terms "part-time" and "full-time" under the Plan, and

---

[4] Joint Appendix ("J.A.") at 0612-0613, 0616, 0605-0607, 0597.
[5] *See* App. Br. at 27.
[6] *See* Brief of Plaintiff-Appellant ("Pl. Br.") at 10.

(c) engage in a reasonable process to determine whether Kane was working a "full-time schedule" under the terms of the Plan during his 30-day trial period. These failures demonstrate arbitrary and capricious conduct of the Appellee in interpreting the Plan Document.[7]

**B.** **The Appellee's analysis of the eight factors set forth in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 355 (4th Cir. 2000) is bereft of merit.**

It is undisputed that the abuse-of-discretion standard of review applies in this case. Under that standard, a court will not disturb a plan administrator's decision if the decision is reasonable, even if [the court] would have come to a contrary conclusion independently. *Ellis v. Metro Life. Ins. Col*, 126 F.3d 228, 232 (4th Cir. 1997). The Board's discretion, however, is not unfettered: its exercise must be reasonable and supported by substantial evidence. *Jani v. Bert BELL/Pete Rozelle NFL Player Retirement Plan, et al.*, 209 Fed. Appx. 305, 313-314 (4th Cir. 2006) (*quoting Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

---

[7] By the terms of the Plan Document, under Effect of the Collective Bargaining Agreement "[b]oth Article IV and the applicable Benefit Schedule as they apply to each Participant shall be amended from time to time by any Collective Bargaining Agreement which governs participation in this Plan for such Participant and the terms of any such Collective Bargaining Agreement are incorporated herein by reference from the date such agreement becomes binding on the Employer. *See* J.A. 63.

(1971). It is thus "more than a mere scintilla," *Id.*, but "less than the weight of the evidence," *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966).

There are eight (8) factors that guide a court's analysis as to whether the administrator's decision was reasonable. These factors include: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Booth*, 201 F.3d at 341.

### 1. The language of the UPS Pension Plan

Appellee asserts that the Plan only credits service for part-time work.[8] Kane agrees that the Plan only credits service for part-time work. Where the parties disagree is whether the Plan contains the definition of full-time for purposes of determining when Kane was no longer a participant in the Plan. The Appellee baldly assets that Kane was working full-time during his 30-day probationary period in transitioning from part-time to full-time. The Plan provisions cited in

---

[8] *See* App. Br. at 29.

Appellee's brief do not address how "part-time" or "full-time" is defined in the Plan, much less preclude service credit for participants undergoing a 30-day qualifying period for a full-time position. Consequently, it is unclear how the Board of Trustees arrived at this conclusion, however, since the Board has yet to inform Kane or any Plan participants how "full-time" is defined in the Plan. The Plan provisions cited in Appellee's brief do not address how "part-time" or "full-time" is defined in the Plan, much less preclude service credit for participants undergoing a 30-day qualifying period for a full-time position.

Appellee argues that the Board of Trustees is not required to define "part-time" and "full-time", even though they are essential terms under the Plan since eligibility is determined based on the employee's employment status. U.S. Department of Labor Regulation 29 CFR 2520.102-3 states that the following information shall be included in the summary plan description provided to participants:

> (j) the plan's requirements respecting eligibility for participation and for benefits. The summary plan description shall describe the plan's provisions relating to eligibility to participate in the plan….

and

> (l) for both pension and welfare benefit plans, a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery (e.g., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of

benefits required by paragraphs (j) and (k) of this section.  29 C.F.R. § 2520.102-3.

The Board failed to abide by the above-referenced regulation and clearly define in the Plan document or summary plan description the exact circumstances that would result in ineligibility for the Plan or a loss of service credit under the Plan. The Appellee's failure to provide the proper information in the Plan in order for participants to understand how one becomes eligible for the Plan (i.e., a part-time employee) and how one becomes ineligible under the terms of the Plan (i.e., promoted to a full-time employee) was imprudent, unreasonable, and weighs against the Board.  Further, the Board neglected to review the definition of "Covered Employment" in the Plan document which clearly states that part-time employment is any employment that is classified as part-time in the National Master Agreement.[9]

## 2.    The Purposes and Goals of the UPS Pension Plan

The Plan's purpose is to provide benefits to part-time employees.  Kane was a part-time employee until he satisfied his 30-day trial period and became a full time employee as a package car driver on May 8, 1984, and, therefore, one of the intended beneficiaries of the Plan.  Again, Appellee asserts that Kane was not a part-time employee while he was undergoing his 30-day trial period from part-time

---

[9] J.A.96

to full-time status without describing what, if any, process it used to arrive at that erroneous conclusion.

### 3. The Adequacy of the Materials Considered to Make the Decision and the Degree to Which They Support It.

The materials the Board reviewed were insufficient and not substantial evidence. In its brief, Appellee states that "the Board of Trustees only needed to know the seniority date, the hours worked in the relevant period in 1984 and the terms of the Plan to make its decision." First, Kane's full-time seniority date was identified as March 22, 1984, March 21, 1984, March 24, 1984 and April 1, 1984.[10] Thus, there was no consistency in the dates and the Board should have engaged in a process to determine what Kane's actual seniority date was by inquiring of the union. "When an administrator has the authority to weigh conflicting pieces of evidence, it abuses its discretion when it fails to address conflicting evidence." *Helton v. AT&T*, 709 F.3d 343, 359 (4th Cir. 2013); *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 633 (4th Cir. 2010) (finding ERISA plan's denial of benefits was unreasonable where administrator failed to address evidence conflicting with its determination).

Second, the Board only reviewed Kane's monthly hours and concluded that because he worked more hours in April and May of 1984 compared to January and February of that same year that Kane must have worked a full-time shift. The

---

[10] *See* Brief of Plaintiff-Appellant ("Pl.'s Br.") at 14.

Board failed to define in its Plan Document "full-time" and it remains a mystery as to how many hours one must work in a month to be considered full time.[11] Finally, the only terms of the Plan that the Appellee cites to are hollow references that the Plan is for part-time employees.[12] It is undisputed that the Plan is for part-time employees. But, at some point these part-timers become full-time employees— how and when they do is defined by the collective bargaining parties, and contained in the Collective Bargaining Agreement. By its terms, the Collective Bargaining Agreement amends the Plan as to those issues, making it clear that the Plan trustees should have consulted with the collective bargaining parties to determine when Kane became a full-time employee, but did not.

Appellee makes reference once again in its response to the fact that Kane agreed to his seniority date of March 22, 1984. Appellee, therefore, agrees that its decision to deny benefits to Kane was based on Kane's reliance on the Board's fiduciary duty of prudence with respect to calculating his service credit. The Appellee's continued reference to Kane's initial reliance on its calculation of his seniority date seems to be the main justification for denying Kane service credit during his 30-day trial period as a part-time employee while transitioning to full-

_____

[11] We assume that the definition of full time is somehow based on monthly hours since that is all the Appellee provided. J.A. at 0625.
[12] *See* Ap. Br. at 29.

time employment.[13]  The Appellee indirectly informs the Court that it failed to engage in a rational decision-making process by relying so heavily on Kane's actions.

Further, the Board neglected to review Kane's personnel file to determine when his official full-time position with UPS began. Had the Board reviewed his personnel file the Board would have found Kane's manager Bob Inman's letter offering him a full-time position and welcoming Kane to UPS on May 8, 1984.[14] Prior to May 8, 1984, Kane was working on a "trial basis" and was receiving benefits as a part-time UPS employee, as evidenced by the fact that Mr. Inman did not explain the full-time benefits to Kane until he became eligible for those benefits on May 8, 1984.[15]  The Board and the District Court disregarded the note from Mr. Inman and decided it was enough that the Board looked at (1) Kane's hours even though the Plan does not state part-time is determined by the number of hours worked, rather it is determined by what positions were listed as part-time positions in the National Master Agreement[16], (2) Kane's prior misplaced reliance on the Board to fulfill its fiduciary duty and accurately calculate his service date, and (3) his full-time seniority date that was inconsistent and, therefore, inaccurate,

---

[13] *See* App. Br. at 15, 16, 19, 26, 27.
[14] J.A. 0490-0491.
[15] *Id*.
[16] J.A. 96.

at best.  The materials the Board looked at, in turn, were inadequate and fail to support Appellee's claim that Kane was a full-time employee.

### 4. Whether the Fiduciary's Interpretation Was Consistent with Other Provisions in the UPS Pension Plan and With Earlier Interpretations of the UPS Pension Plan.

Appellee argues that the decision to deny Kane service credit for his 30-day trial period was consistent with other provisions in the Plan because the Plan only provides benefits to part-time employees.  Appellee baldly asserts that Kane was working a full-time shift without defining "full-time".  Further, Appellee fails to address the argument involving "Covered Employment" under section 1.9 of the Plan.  Appellee instead makes reference to how Section 3.3 of the Plan provides service credit to part-time employees.  The Board and the District Court focused on service credit rules but failed to address Covered Employment" as defined by the Plan.  The Plan states that Covered Employment means "any employment by the Employer while covered by the National Master Agreement which is classified as part-time employment in accordance with the terms of the National Master Agreement, including part-time employment which predates August 1, 1999, and with respect to which such agreement provides for benefits under this Plan."[17]  In other words, service credit should be awarded for covered employment that is classified as such, without regard to the employee's status when he is performing

---

[17] J.A. 0096.

that work.  The Board abused its discretion by failing to investigate whether the work Kane performed during his 30-day trial period in which he was qualifying for a full-time package car driver was part-time work.

### 5. Whether the Decision-Making Process was Reasoned and Principled.

Appellee fails to adequately address how it determined Kane was a full-time employee during his 30-day trial period when it neglected to fully ascertain the meaning of "full-time" and "part-time" under the Plan.  Rather, the Board asserted that since Kane worked more hours in April and May of 1984 that he must have been working a full-time shift.  This conclusion requires the Court to take a huge leap of faith.  It is uncertain as to how working more hours automatically equates to full-time employment in the first place.  Secondly, it is uncertain as to how working more hours equates to full-time employment where there is no definition of full-time employment and the Plan document even seems to suggest that full-time employment is based on "employment that is classified as part-time employment in accordance with the terms of the National Master Agreement" and not necessarily by hours worked.[18]

The Board failed to conduct a detailed investigation as to what constitutes "full-time" and what constitutes "part-time" under the Plan.  The Board could have inquired into the matter with the Teamsters Union to determine what was

------

[18] J.A. 0096.

bargained for during the collective bargaining process with respect to the terms part-time and full-time.  Had the Board posed this question to the Union, the Union President would have informed the Board that the employee is considered part-time even on days he performs the full-time job in order to qualify for it.[19]  It was unreasonable and imprudent for the Board to refuse to investigate the matter of Kane's full-time start date and ascertain how "full-time" employment should be defined under the Plan.

### 6. Whether the Decision Was Consistent with the Procedural and Substantive Requirements of ERISA.

As mentioned in our analysis of the first factor, the Board failed to abide by Department of Labor Regulation 29 CFR 2520.102-3 and clearly define in the Plan document or summary plan description the circumstances that would result in ineligibility for the Plan or loss of service credit under the Plan.[20]  Further, Appellee failed to address ERISA section 203 which states that in computing the period of service under the plan for purposes of determining the non-forfeitable percentage…all of an employee's years of service[21] with the employer or

---

[19] J.A. 0520-0522.

[20] *See generally* J.A. 0028-0236.

[21] The term "year of service" means a calendar year, or other 12-consecutive month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) during which the participant has completed 1,000 hours of service. 29 U.S.C. § 1053(b)(2)(A).

employers maintaining the plan shall be taken into account. 29 U.S.C. § 1053(b)(1).

**7.    Whether Any External Standard Is Relevant to the Exercise of Discretion**

Appellee states *Bailey v. Blue Cross & Blue Shield of VA.*, 67 F.3d 53, 57 (4th Cir. 1995) (quoting *Wheeler v. Dynamic Eng'g Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) does not apply with respect to construing ambiguous terms against the drafter because *Bailey* involved a substantial sum of money and this case does not involve such a significant sum.[22]  We are uncertain as to how the amount at issue in that case renders it inapposite with respect to construing ambiguous terms against the drafter.  Under the premise in *Bailey*, the drafters of the Plan had the ability to clarify essential terms in the Plan and failed to do so; therefore, the terms should be construed against the Board, and in accordance with the reasonable expectations of the participant.  *See Bailey*, 67 F.3d at 57.

---

[22] Appellee seeks to belittle the amount of money Kane will receive (an additional $640 a month) and therefore limit its conflict of interest.  The greater issue, here, however, is the amount of money UPS may be liable to remit to the Teamsters Fund due to its breach of fiduciary duty in failing to properly award service credit for all covered service during the transition from part-time to full-time status for all UPS employees who were covered by the Collective Bargaining Agreements ("CBAs") referenced in the National Teamsters CBA.  Any local union that follows these rules may have similarly situated individuals who transferred from part-time to full-time employment with UPS, thus subjecting UPS to a significant amount of liability.

### 8.     Whether Any External Standard is Relevant to the Exercise of Discretion.

The first seven factors provide little to no support to the Board of Trustees' decision to deny Kane the part-time service credit he deserves under the Plan.  The final factor also provides the Board of Trustees with no relief as the Board operated under a conflict of interest.  A plan administrator acts under a conflict of interest where it both administers the plan and pays benefits out of its own pocket. *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008); *Helton v. AT&T*, 709 F.3d 343, 359 (4th Cir. 2013); *Williams*, 609 F.3d at 632.  Here, the Board both administered and funded the Plan.  Thus, the Board operated under a conflict of interest.  Appellee cites a non-binding case from the eleventh circuit where the court looked at the participant claim amount versus the company's revenues and held that the company's conflict was not enough to be a dispositive factor in the conflict analysis.  The dollar amount is irrelevant to determining whether there is a conflict of interest in the Fourth Circuit, however.  *See Booth*, 201 F.3d at 342-344; *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008); and *Helton v. AT&T*, 709 F.3d 343, 359 (4th Cir. 2013).

The strong weight of the *Booth* factors supports the decision to overturn the District Court's grant of summary judgment on behalf of the Board.  The Board's decision to deny Kane service credit during his 30-day trial period when he was a

part-time employee vying for a full-time position was unreasonable and an abuse of discretion.

## II. THE DISTRICT COURT WRONGLY DENIED KANE LEAVE TO REINSTATE HIS ERISA § 502(a)(2) CLAIM WHEN HE SOUGHT PROPER RELIEF FOR THE PLAN.

### A. Good Cause Was Not Required Where the Parties Agreed Count II Could Be Reinstated, and the Court Did Not Impose the Qualification of Good Cause in the Modified Scheduling Order.

Before a scheduling order was issued in this matter the parties had agreed that Count II would be dismissed without prejudice, so long as the Appellant could reinstate the claim. Specifically, on March 12, 2012, the parties entered into an agreement pursuant to which "The parties stipulate that Plaintiff dismisses Count II without prejudice to reinstate the claim as if originally filed on December 23, 2011, when this action was commenced, effectively tolling the statute of limitations as of that date." *See* Dckt. #5. In other words, the parties agreed that a claim about which the Appellee was fully on notice of could be reinstated by the Appellant. The Appellee could have included language requiring a showing of good cause to reinstate the claim, but did not.

There were no qualifiers from the District Court that time, as the District Court had not issued a scheduling order until March 14, 2012. The parties further modified that scheduling order and did not reference the earlier agreement about

Count II to subject the potential reinstatement of the claim to the deadline of amendments to the pleadings. Again, the Appellee could have included language requiring a good cause showing for reinstatement of a claim it previously agreed could be reinstated, but did not. The District Court, entered the modified scheduling order prepared by the parties, and was fully aware of the earlier stipulation. The District Court did not reference the earlier stipulation as part of the modified scheduling order.

In effect, the parties agreed that reinstatement was permitted without qualification, and if the Appellee believed reinstatement of Count II should have been subject to the deadline for amendments of the pleadings, it could have referenced in the modified scheduling order that it participated in preparing, but did not. For that reason, the reinstatement of Count II was not subject to FRCP 16(b), and good cause did not need to be shown because it was not referenced in the scheduling order prepared by the parties. The question not addressed below was whether the Appellee was prejudiced by the reinstatement of the claim. The District Court did not address prejudice, because there was none.

On these facts, inasmuch as the District Court and the Appellee could have imposed a good cause requirement for reinstatement of Count II, but did not, it was improper to impose it when Appellant sought to reinstate Count II, especially where there was no evidence prejudice upon the Appellee.

**B. Kane Seeks Relief For the Plan Under ERISA § 502(a)(2).**

Appellee unsuccessfully argues that Kane is seeking individual relief under

ERISA § 502(a)(2). In Kane's complaint, Kane requests that the Court award such

"equitable and remedial relief as the Court deems appropriate."[23] The specific

equitable relief Kane mentions is reformation of the Plan document to adequately

provide service credit to part-time participants transitioning from part-time to full-

time employment to be in parity with the collective bargaining agreement

language.[24]

**C. Kane's ERISA § 502(a)(2) Claim is Not Barred By the Statute of Limitations.**

Appellee claims Kane is proposing a new claim that is barred by the statute

of limitations when Kane seeks to reinstate his claim pursuant to the March 12,

2012 joint stipulation where the Court agreed to dismiss the ERISA § 502(a)(2)

claim without prejudice and allow the claim to be reinstated as if originally filed on

December 23, 2011. Kane did not acquire knowledge of Appellee's breach until

Appellee denied his claim for benefits and refused to engage in a principled

decision-making process and abide by the collective bargaining agreement June 6,

2011. Suit was then filed on December 23, 2011 (a little over 6 months from

Appelle's denial letter).

---

[23] J.A. at 0012.
[24] *See* Pl.'s Mot. To Reinstate Claim, ECF No. 38.

To support its misplaced argument that Kane's claim is barred by the statute of limitations, Appellee cites to *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013), an inapposite case where the court held that the fiduciaries' prohibited transaction occurred when they elected the prohibited investment funds that were in question. This case does not involve prohibited transactions that we are aware of or investment issues and is misplaced here. Pursuant to ERISA § 413, the statute begins to run when the plaintiff has actual knowledge of the breach. 29 U.S.C. § 1113. Here, Appellee failed to act prudently and failed to follow the Plan documents when it issued its appeal letter refusing to credit Kane, and participants in his same situation, service credit for the 30-day trial period advancing from part-time to full-time employment. Further, with respect to the six-year limitations period, ERISA § 413's limitation period begins immediately upon "the last action which constituted a part of the breach or violation." *Id.* By Appellee's own admission, Appellee continues to interpret the Plan document to deny service credit to part-time employees working a 30-day trial period while transitioning to full-time status.[25] Therefore, the statute continues to run and Kane's claim is not barred by the statute of limitations.

---

[25] App. Br. at 37, n.117.

## CONCLUSION

None of the Appellee's arguments suffice to uphold the District Court's grant of summary judgment in favor of the Appellee. The District Court's grant of summary judgment should be overturned as the Appellee abused its discretion in failing to award service credit to Kane when he worked as a part-time employee during his 30-day trial period while qualifying for a full-time package car driver position. Further, the District Court's judgment to deny Kane's Motion to Correct Filing was an abuse of discretion as Kane's claim is actionable as a matter of law because it is a claim for the benefit of the Plan as a whole and is not barred by the statute of limitations.

Dated: June 2, 2013

Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark
Clark Law Group, PLLC
1250 Connecticut Avenue, N.W.,
Suite 200
Washington, D.C. 20036
Telephone: (202) 293-0115
Fax: (202) 293-0115

*Attorneys for Plaintiff-*
*Appellant Gregory Kane*

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests this Court to grant oral argument.

Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark
Clark Law Group, PLLC
1250 Connecticut Avenue, N.W.,
Suite 200
Washington, D.C. 20036
Telephone: (202) 293-0115
Fax: (202) 293-0115

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,568*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: June 2, 2014                    /s/ Denise M. Clark

                                              *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of June, 2014, I caused this Reply Brief

of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

John T. McDonald
THOMPSON HINE LLP
2 Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326

C. Dennis Southard, IV
THOMPSON HINE, LLP
1919 M Street, NW, Suite 700
Washington, DC 20036-0000

*Counsel for Appellee*

I further certify I caused the required copies of the Reply Brief of Appellant

to be hand filed with the Clerk of the Court.

/s/ Denise M. Clark
*Counsel for Appellant*